SARAH M. BARE, EMPLOYEE-PLAINTIFF v. WAYNE POULTRY COMPANY, EMPLOYER, AND AETNA CASUALTY AND SURETY INSURANCE COMPANY, CARRIER; DEFENDANTS

No. 8310IC234

(Filed 21 August 1984)

1. **Master and Servant § 94— workers' compensation—horseplay—findings supported by evidence**

In an action to recover for an injury sustained by plaintiff during horseplay while on the job, evidence was sufficient to support the Commission's finding of fact that it was customary for defendant's processing line employees to play around with each other with their chicken deboning knives and that this activity was apparently condoned by the employer, since the evidence tended to show that all the employees occasionally played around with their knives; a supervisor constantly kept his workers in view; and nothing was said or done by the employer to prevent the horseplay.

2. **Master and Servant §§ 56, 57— workers' compensation—injury sustained during horseplay—causal connection between employment and injury—injury covered**

There was no merit to defendants' contention that the horseplay which led to plaintiff's injury put her beyond the protection of the Workers' Compensation Act, since plaintiff was injured on a chicken deboning processing line by a deboning knife in the hand of a fellow employee also working on the line and the causal connection between the employment and injury was thus very plain;

being cut by a chicken deboning knife was not a hazard that plaintiff shared equally with the rest of the laboring force nor was the injury one that could have just as readily been sustained elsewhere away from the job; and that plaintiff's participation in the horseplay that led to her injuries was both foolish and negligent was irrelevant because fault is not a factor under the Workers' Compensation Act, and it does not exclude workers otherwise covered because they were engaged in foolishness or horseplay when injured.

APPEAL by defendants from opinion and award of the North Carolina Industrial Commission filed 15 December 1982. Heard in the Court of Appeals 8 February 1984.

Plaintiff seeks to recover Workers' Compensation for an injury sustained while in the employ of the defendant Poultry Company. Deputy Commissioner Shuping, following a hearing, denied plaintiff's claim. His key findings and conclusions were that while plaintiff was injured during the course of her employment, the injury did not arise out of her employment, but rather arose out of "the sportive acts, conduct and/or horseplay" of plaintiff and a fellow employee. On appeal, the Full Commission interpreted the evidence differently and concluded that though the injury occurred during the course of horseplay with a co-employee, it nevertheless arose out of and in the course of plaintiff's employment, and awarded benefits to her.

The evidence before both the Deputy Commissioner and the Full Commission showed that: Plaintiff and James Anderson were chicken deboners in defendant employer's plant, and worked next to each other on the processing line. In doing their work they used knives that had blades approximately 5 inches long and ½ inch wide. On 7 August 1981, while both employees were at their places on the processing line and doing their work, Anderson mentioned how shabby his apron looked and plaintiff stated that she would take care of it for him and reached over and playfully cut the strings to Anderson's apron with her knife. In retaliation, Anderson tried to cut plaintiff's apron, but missed, and plaintiff then ripped Anderson's apron. Anderson, again trying to cut plaintiff's apron, cut her thigh instead, causing plaintiff to be disabled for a time, incur medical expenses, and have a scar approximately eight inches long. Playing around with their knives on the processing line was a common practice of the employees, and the Commission found that this practice was apparently condoned by the employer.

*Gardner, Gardner, Johnson, Etringer & Donnelly, by Walter J. Etringer, for plaintiff appellee.*

*Womble, Carlyle, Sandridge & Rice, by Keith W. Vaughan, for defendant appellants.*

PHILLIPS, Judge.

[1] Though the main question for determination is whether plaintiff is barred from Workers' Compensation benefits because she was injured while participating in horseplay with a fellow employee, we address first the defendants' only other contention: That there is no support in the evidence for the Full Commission's finding of fact that it was customary for the processing line employees to play around with each other with their chicken deboning knives and this activity was apparently condoned by the employer. Concerning this, plaintiff's testimony was as follows:

Q. Was it usual to be talking and joking around on the line?

A. Un-hunh. People have always done it, talking to each other.

\*    \*    \*

Q. Before this occasion had you ever played around with other workers with a knife in your hand?

A. Yes. Everybody does.

The testimony of the employer's supervisor for the part of the processing line where plaintiff and four others worked in a close little group, according to him, indicated that the processing line employees were under constant supervision. He testified that he observed the line every day and knew where the workers were standing "at all times," and that they moved around very little. But neither he nor anyone else testified, as the Commission noted, either that playing around with knives on the processing line was not a common practice, or that the company did not know about it, or that it was forbidden by the company, or that anything had ever been done to prevent it. In our judgment, the evidence described, along with the employer's silence in regard to it, adequately supports the findings made. If all the processing line employees occasionally played around with their knives, as

the testimony positively states, a supervisor that constantly kept his workers in view could not have avoided seeing the playing around each time it happened; and that nothing was said or done to prevent it justified the Commission inferring that the company was not concerned about it. Thus, for the purposes of this appeal, the findings are conclusive. *Mitchell v. Board of Education*, 1 N.C. App. 373, 161 S.E. 2d 645 (1968).

[2] The defendants' contention that the horseplay which led to plaintiff's injury put her beyond the protection of our Workers' Compensation Act cannot be accepted. The Act applies to all injuries sustained by covered employees, with certain exceptions irrelevant to this case, which occur by accident "arising out of and in the course of the employment," G.S. 97-2(6), and in our judgment plaintiff's award was not erroneously made. In general, the phrase "in the course of" refers to the time, place and circumstances under which an accident occurs; and since plaintiff's injury occurred during the hours of employment, at the place of employment, while she was engaged in the performance of her duties, the injury therefore occurred "during the course" of the employment, as both the Deputy Commissioner and the Full Commission found. *Withers v. Black*, 230 N.C. 428, 53 S.E. 2d 668 (1949). And, in general, the term "arising out of" refers to the origin or causal connection of the accidental injury to the employment. *Gallimore v. Marilyn's Shoes*, 292 N.C. 399, 233 S.E. 2d 529 (1977). For an accident to "arise out of" an employment, there must be some causal connection between the employment and the injury. *Bolling v. Belk-White Co.*, 228 N.C. 749, 46 S.E. 2d 838 (1948). Since plaintiff was injured on a chicken deboning processing line, by a chicken deboning knife in the hand of a fellow employee also working on the line, the causal connection between the employment and the injury could hardly be plainer, whether the company condoned the workers playing around with knives on the line or not. Being cut by a chicken deboning knife was not a hazard that plaintiff shared equally with the rest of the laboring force; nor was the injury that she sustained one that could have just as readily been sustained elsewhere, away from the job. *Vause v. Vause Farm Equipment Co., Inc.*, 233 N.C. 88, 63 S.E. 2d 173 (1951). And that the plaintiff's participation in the horseplay that led to her injuries was both foolish and negligent is beside the point, we think, since fault is not a factor under the Workers'

Compensation Act and it does not exclude workers otherwise covered because they were engaged in foolishness or horseplay when injured.

The Workers' Compensation Act is a compromise arrived at through the concessions of employees and employers alike. *Conrad v. Cook-Lewis Foundry Co.*, 198 N.C. 723, 153 S.E. 266 (1930). Nothing in it supports the notion that it was enacted just for the protection of careful, prudent employees, or that employees that do not stick strictly to their business are beyond its protection. By its terms, with certain exceptions irrelevant to this case, the Act applies to all employees who work for employers with the requisite number of employees and are injured by accident during the course of and arising from their employment; and it is not required that the employment be the sole proximate cause of the injury, it being enough that "any reasonable relationship to the employment exists, or employment is a contributory cause." *Allred v. Allred-Gardner, Inc.*, 253 N.C. 554, 557, 117 S.E. 2d 476, 479 (1960). Though the Act is silent as to employees who participate in tomfoolery, it expressly excludes employees who are injured or killed as a proximate result of being under the influence of an intoxicant, unless the employer furnishes it; being under the influence of a controlled substance not prescribed by a practitioner; and of *intentionally and willfully undertaking to kill* himself or another. G.S. 97-12. If we should add horseplay voluntarily participated in by the claimant to this exclusionary list, as the defendants urge us to do, it would be a judicial interpolation that we are neither empowered nor inclined to make.

Nor do we accept defendants' contention that injuries resulting from horseplay initiated and participated in by a claimant have already been excluded from our Workers' Compensation Act by the decision of our Supreme Court in *Chambers v. Union Oil Company*, 199 N.C. 28, 153 S.E. 594 (1930). Our understanding of that case is otherwise. In *Chambers*, the plaintiff truck driver was accidentally shot by a pistol that a fellow truck driver carried in his work and mishandled, and the Court's decision was that the "sky-larking" or horseplay defense recognized by some jurisdictions did not apply to the circumstances of that case, since the plaintiff was an innocent bystander and did not participate in any sky-larking that may have occurred. Indeed, it is not clear that sky-larking or horseplay (generally understood, according to the

opinion, to mean fooling around that is independent of and disconnected from the work) was even done by the fellow employee. The facts stated in the opinion indicate that the fellow worker simply mishandled the gun either in showing it to the plaintiff or in tossing it into the seat of his nearby truck; and the main thrust of the decision was that the negligence of the fellow servant is no defense to a Workers' Compensation claim. In all events, it is clear that the decision in that case is no precedent for this one, though in quoting from and discussing what annotators and other courts had said about the so-called horseplay defense, it was possibly implied that participators in horseplay were excluded from the workers' compensation law. But that question was not before the Court, and in quoting from and discussing decisions and writings from elsewhere, the Court also said some things that can fairly be construed to mean that the horseplay defense is a hypocritical evasion of the rule that contributory negligence and the negligence of fellow servants have no place in Workers' Compensation litigation. Because of the opinion's wide range, both parties rely on it and quote from it in their briefs. The defendants were encouraged by the following (199 N.C. at 32-33, 153 S.E. at 596-597):

> The author of the annotation in 13 A.L.R., 540, says: 'It is generally held that no compensation is recoverable under the Workmen's Compensation Acts, for injuries sustained through horse-play or fooling which was done independently of and disconnected from the performance of any duty of the employment, since such injuries do not arise out of the employment within the meaning of the acts.' Numerous cases are cited from various jurisdictions in support of the principle of law so announced. In the same note the author continues the discussion as follows: 'But in a number of cases an exception to the general rule has been recognized, and the right to compensation sustained, where an employee, who was injured through horse-play or fooling by other employees, took no part in the fooling, but was attending to his duties.' Numerous cases are cited in support of this proposition.

*    *    *

It is generally conceded by all courts that the various compensation acts were intended to eliminate the fault of the workman as a basis for denying recovery. In other words, a workman is entitled to recover irrespective of fault if the injury arises out of and in the course of the employment. The doctrine of horse-play, which excludes a workman from compensation, although he is not at fault, and does not engage therein, is inconsistent with the underlying philosophy of compensation acts, which are designed for the very purpose of eliminating fault as a basis for determining liability.

And the plaintiff saw comfort in this (199 N.C. at 31, 153 S.E. at 595-596):

It is a self-evident fact that men required to work in daily and intimate contact with other men are subjected to certain hazards by reason of the very contact itself because all men are not alike. Some are playful and full of fun; others are serious and diffident. Some are careless and reckless; others are painstaking and cautious. The assembling of such various types of mind and skill into one place must of necessity create and produce certain risks and hazards by virtue of the very employment itself.

. . . .

[T]he fact remains that the bulk of normal American workmen possess a stratum or residuum of vivacity and good nature which frequently manifests itself in joking and harmless pranks. These things are not unnatural, but natural and the ordinary outcropping of industrial contact between men of all classes and types. Such risks, therefore, are incident to the business and grow out of it.

Though neither statement quoted from the opinion in *Chambers* has precedential value for this case, the latter is nevertheless useful to us for its proper and insightful recognition that the workers' compensation system is based upon the realities of human conduct, and that workers occasionally relieving the tedium of their labors by sportive and foolish acts is a routine and accepted incident of employing them. While some courts, as the decision indicates, have devised complex and intricate rules pertaining to horseplay [*see* 1A Larson, The Law of Workmen's

Compensation § 23:20 (1982)], we do not believe that the circumstances of this case either justify or require such a step by us. What the circumstances do require, we think, is simply a holding that plaintiff's award must be affirmed, since the record shows that her injuries occurred during the course of and arose from her employment. To hold otherwise would not give the Act the liberal construction that our Courts have stated time and time again is required; but would, it seems to us, interpolate into the Act an exclusionary provision that the General Assembly has not seen fit to enact.

Affirmed.

Judges WELLS and BRASWELL concur.