RANDY B. FREEMAN, Employee, Plaintiff v. J.L. ROTHROCK, Employer, and NORTH AMERICAN SPECIALTY, Carrier, AEQUICAP CLAIMS SERVICES, INC. (Formerly CLAIMS CONTROL, INC.) Administrator, Defendants-Appellants

No. COA07-269

(Filed 4 March 2008)

**1. Appeal and Error— preservation of issues—motion to dismiss made in brief**

Plaintiff's motion in his brief to dismiss defendants' appeal was not properly before the Court of Appeals because such motions may not be raised in a brief, but instead must be made in accordance with N.C. R. App. P. 37.

**2. Appeal and Error— preservation of issues—failure to assign error to findings of fact—findings deemed binding**

Defendants failed to assign error to the Full Commission's findings of fact numbers 1 through 9 in a workers' compensation case, and therefore, these findings of fact are deemed binding on appeal.

### 3. Workers' Compensation— Larson test—misrepresentations barred right to compensation

The trial court erred in a workers' compensation case by concluding that plaintiff employee's misrepresentations did not bar his right to recover compensation, because: (1) the Larson test provides that an employee may be barred from recovering workers' compensation benefits as a result of a false statement at the time of hiring when the employer proves the employee knowingly and willfully made a false representation as to his physical condition, the employer relied upon the false representation and this reliance was a substantial factor in the hiring, and there was a causal connection between the false representation and the injury; (2) although there appears to be no specific statutory basis for the Larson test, it has authority in the common law doctrines of fraud in the inducement and equitable estoppel, numerous state courts have adopted it, a majority of states that have considered this issue have judicially recognized intentional misrepresentation to gain employment as an affirmative defense even in the absence of a specific statute, and intentional misrepresentations during the hiring process as to a prior medical condition is the type of conduct which cannot be rewarded; and (3) applying the Larson test to this case, the full Commission found as fact that plaintiff misrepresented his physical condition at the time of hiring, and plaintiff conceded that the first criterion was satisfied; the evidence presented to the full Commission demonstrated defendant relied upon plaintiff's false representation and that the reliance was a substantial factor in the hiring; and several doctors testified that plaintiff's undisclosed medical condition increased his risk of the back injury at issue, and common sense dictated that a prior injury of the nature suffered by defendant would create a predisposition to further injury considering the nature of the work involved.

Judge WYNN dissenting.

Appeal by defendants from Opinion and Award of the Full Commission of the North Carolina Industrial Commission entered 9 November 2006. Heard in the Court of Appeals 18 September 2007.

*Jay Gervasi, P.A., by Jay A. Gervasi, Jr., for plaintiff-appellee.*

*Brooks, Stevens & Pope, P.A., by Joy H. Brewer, for defendants-appellants.*

**FREEMAN v. J.L. ROTHROCK**

[189 N.C. App. 31 (2008)]

JACKSON, Judge.

J.L. Rothrock ("defendant-employer"), its insurance carrier, North American Specialty, and its insurance administrator, Aequicap Claims Services, Inc. (collectively, "defendants") appeal from an order of the Full Commission of the North Carolina Industrial Commission ("Full Commission") awarding workers' compensation benefits to Randy B. Freeman ("plaintiff"). For the reasons stated below, we reverse.

Plaintiff has a history of lower back problems, having experienced back injuries in 1992 and 1996 and having filed workers' compensation claims with respect to both injuries. As a result of the lower back injury in 1996, plaintiff was assigned a ten percent permanent partial impairment rating to his back and was restricted to performing light- to medium-duty work, including: (1) lifting no more than thirty-five pounds occasionally; (2) lifting no more than fifteen pounds frequently; (3) lifting no more than seven pounds continuously; and (4) limited sitting, bending, driving, and climbing. Plaintiff's work restriction was based upon a general estimate of a truck driver job as opposed to a specific job description. Plaintiff acknowledged in his testimony that, as a result of these restrictions, he was (1) incapable of continuing to drive a truck for B.B. Walker, his employer at the time, and (2) advised to seek another line of employment.

In early 2000, plaintiff applied for employment with defendant-employer, performing substantially the same work "[b]ecause it—quite a time had passed there and it was—it was good. . . . I could do basically pretty much what I wanted to do, up to a certain extent." At the time he applied for the position, plaintiff was aware that he remained restricted to light- to medium-duty work, notwithstanding the fact that the job description form prepared by defendant-employer expressly stated: "This is a strenuous position which requires the ability to sit, stand, bend, stoop, reach, climb, push, pull, and live under adverse conditions . . . ."

On 9 February 2000, plaintiff completed, as part of defendant-employer's application process, a medical history questionnaire. On the questionnaire, plaintiff denied (1) suffering from any prior health conditions, including backache or a "herniated intervertebral disk (slipped disk)"; (2) the existence of "any health-related reason" that may prevent plaintiff from performing the job for which he was applying; (3) having "any physical defects" or "work limitations" that would

have prevented him "from performing certain kinds of work"; (4) having "any disabilities or impairments" that may have affected his performance in the position for which he was applying; and (5) having ever filed a workers' compensation claim. Plaintiff later testified that he made these false representations on the questionnaire because he was concerned that he would not be hired if he told the truth. Specifically, plaintiff stated, "The point was I'd go fill out an application. At that time, they'd ask if you've ever been injured, or you'd ever been hurt on a job, or if you've ever drawn workers' comp and I'd put 'yes,' and nobody ever hired me."

Also on 9 February 2000, plaintiff presented to Dr. Robert Williford ("Dr. Williford") for a Department of Transportation physical examination—a prerequisite for hiring. Dr. Williford testified that as part of such an examination, he interviews the patient and asks for a medical history, in part because there are "conditions that cannot be discovered based purely on a physical exam." At the top of his examination forms is a section entitled "Health History," in which various injuries and illnesses are listed. Next to each injury or illness are two boxes, one for "Yes" and one for "No." Dr. Williford testified that none of the boxes were checked on the examination form for plaintiff's 9 February 2000 examination that Dr. Williford retained in his files.[1] Dr. Williford stated that he always asks if the patient has had any serious injuries and explained that if plaintiff had informed him of a prior injury, he probably would have checked the appropriate box on the examination form.

In June 2000, after plaintiff executed the job description form describing the position as "strenuous," defendant-employer hired plaintiff. Less than two years later, on 11 March 2002, plaintiff sustained an injury by accident to his back while cranking a dolly in the course and scope of his employment with defendant-employer. Plaintiff experienced significant pain in his lower back, and over time, he also developed problems with his legs. Plaintiff reported the incident to defendant-employer within fifteen to twenty minutes after its occurrence. Defendants admitted compensability of the accident, and as of 12 March 2002, plaintiff began receiving ongoing total disability payments of $431.32 per week.

On 23 December 2002, defendants filed a Form 24 Application to Terminate or Suspend Payment of Compensation, contending that

---

1. All of the "No" boxes, however, are checked on the form contained in the exhibits submitted with the record on appeal.

plaintiff had refused an offer of suitable employment. Defendants' Form 24 was disapproved by order entered 3 February 2003 by Special Deputy Commissioner Chrystina S. Franklin ("Special Deputy Commissioner Franklin"). Defendants filed another Form 24 on 5 March 2003, and by order entered 22 April 2003, Special Deputy Commissioner Franklin indicated that she was unable to reach a decision, noting that "[d]ue to the particular disputed issue, evidence will need to be taken, and the matter should proceed to hearing."

Following a hearing on 25 July 2003, Deputy Commissioner Bradley W. Houser ("Deputy Commissioner Houser") entered an Opinion and Award in favor of plaintiff. Defendants appealed to the Full Commission, and on 9 November 2006, the Full Commission entered an Opinion and Award affirming Deputy Commissioner Houser's Opinion and Award. Chairman Buck Lattimore, dissenting in part from the Full Commission's Opinion and Award, stated that "[t]he majority has erred in finding that plaintiff has established entitlement to ongoing disability payments . . . [because] [t]he competent evidence of record fails to show that plaintiff is completely incapable of performing any work." Defendants filed timely notice of appeal to this Court.

[1] As a preliminary matter, we note that plaintiff has included in his brief a motion to dismiss defendants' appeal. It is well-established, however, that "[s]uch motions may not be raised in a brief, but rather must be made in accordance with [Rule 37 of the North Carolina Rules of Appellate Procedure]." *Warren v. Warren*, 175 N.C. App. 509, 512, 623 S.E.2d 800, 802 (2006). Plaintiff's motion is not properly before this Court, and therefore, we decline to address it.

[2] Our standard of review from a decision of the Full Commission

is limited to determining whether there is any competent evidence to support the findings of fact, and whether the findings of fact justify the conclusions of law. The findings of the Commission are conclusive on appeal when such competent evidence exists, even if there is plenary evidence for contrary findings. This Court reviews the Commission's conclusions of law *de novo*.

*Ramsey v. S. Indus. Constructors, Inc.*, 178 N.C. App. 25, 29-30, 630 S.E.2d 681, 685 (internal quotation marks and citations omitted), *disc. rev. denied*, 361 N.C. 168, 639 S.E.2d 652 (2006). Additionally, in the instant case, defendants have failed to assign error to the Full Commission's findings of fact numbers 1 through 9, and therefore,

these findings of fact are deemed binding on appeal. *See McGhee v. Bank of Am. Corp.*, 173 N.C. App. 422, 427, 618 S.E.2d 833, 837 (2005).

[3] Defendants first argue that the Full Commission erred in concluding that plaintiff's misrepresentations did not bar his right to recover compensation. We agree.

In its Opinion and Award, the Full Commission found "that plaintiff had applied for a job with defendant-employer on June 1, 2000, had been hired conditionally, and had been given a medical questionnaire to complete to ensure he had the physical ability to perform its truck driving job." The Full Commission further found that

[i]n completing the medical questionnaire, plaintiff made no reference to prior back injuries he had or to workers' compensation claims associated with those injuries. While his responses to most of the questions were either accurate or ambiguous, the negative answers to the direct questions as to whether he had ever had a backache or made a workers' compensation claim were clearly incorrect.

Defendants, therefore, argue that plaintiff should be barred from recovering based upon a three-part test from Professor Larson's treatise on workers' compensation ("the Larson test").

Pursuant to the Larson test, an employee may be barred from recovering workers' compensation benefits as a result of a false statement at the time of hiring when the employer proves:

(1) The employee must have knowingly and wilfully made a false representation as to his or her physical condition. (2) The employer must have relied upon the false representation and this reliance must have been a substantial factor in the hiring. (3) There must have been a causal connection between the false representation and the injury.

3 *Larson's Workers' Compensation Law* § 66.04 (2006) (footnotes omitted).

This Court previously has expressed disapproval for the Larson test, explaining that "neither the Industrial Commission nor this Court has the authority to adopt such a defense, if it is not found in the Workers' Compensation Act." *Hooker v. Stokes-Reynolds Hosp.*, 161 N.C. App. 111, 115, 587 S.E.2d 440, 443 (2003), *disc. rev. denied*, 358 N.C. 234, 594 S.E.2d 192 (2004). The Court in *Hooker*, however, expressly did not reach the merits of such an argument, and there-

fore, we are not bound by its discussion of the Larson test. *See Debnam v. N.C. Dep't of Corr.*, 334 N.C. 380, 386, 432 S.E.2d 324, 329 (1993) ("[S]tatements in the nature of *obiter dictum* are not binding authority."). Accordingly, neither this Court nor our Supreme Court has ruled conclusively on the Larson test.[2]

"The Workers' Compensation Act is a compromise arrived at through the concessions of employees and employers alike." *Bare v. Wayne Poultry Co.*, 70 N.C. App. 88, 92, 318 S.E.2d 534, 538 (1984), *disc. rev. denied*, 312 N.C. 796, 325 S.E.2d 484 (1985). "The [A]ct should be construed liberally, to the end that rights of parties may be fully protected. On the other hand, it should not be so interpreted or the procedure thereunder be of such a nature as to jeopardize the substantial rights of either party." *Singleton v. Durham Laundry Co.*, 213 N.C. 32, 35, 195 S.E. 34, 36 (1938).

It is well-established that our "[Workers' Compensation] Act applies only where the employer-employee relationship exists." *Hicks v. Guilford County*, 267 N.C. 364, 365, 148 S.E.2d 240, 242 (1966). Pursuant to North Carolina General Statutes, section 97-2,

> [t]he term "employee" means every person engaged in an employment *under any appointment or contract of hire or apprenticeship*, express or implied, oral or written, including aliens, and also minors, whether lawfully or unlawfully employed, but excluding persons whose employment is both casual and not in the course of the trade, business, profession, or occupation of his employer . . . .

N.C. Gen. Stat. § 97-2(2) (2005) (emphasis added).

Although "[o]ur Supreme Court 'has warned against any inclination toward judicial legislation' in the construction of the Workers' Compensation Act," *Hooker*, 161 N.C. App. at 115, 587 S.E.2d at 443 (quoting *Johnson v. S. Indus. Constructors*, 347 N.C. 530, 536, 495 S.E.2d 356, 359 (1998)), it is well-settled that "in construing the provisions of this State's Workers' Compensation Act, common law rules . . . remain in full force and continue to apply in North Carolina,

---

2. Although this Court rejected the Larson test in an unpublished opinion, *McCollum v. Atlas Van Lines*, No. COA03-897, 2004 N.C. App. LEXIS 1651, at *20 (N.C. Ct. App. Sept. 7, 2004), *disc. rev. denied*, 359 N.C. 190, 607 S.E.2d 276 (2005), it is well-established that unpublished opinions are not binding upon this Court. *See United Servs. Auto. Ass'n. v. Simpson*, 126 N.C. App. 393, 396, 485 S.E.2d 337, 339, *disc. rev. denied*, 347 N.C. 141, 492 S.E.2d 37 (1997). Therefore, we are free to reconsider the issue.

FREEMAN v. J.L. ROTHROCK

[189 N.C. App. 31 (2008)]

unless specifically abrogated or repealed by our General Assembly or Supreme Court." *Tise v. Yates Constr. Co., Inc.*, 122 N.C. App. 582, 587, 471 S.E.2d 102, 106 (1996), *aff'd as modified*, 345 N.C. 456, 480 S.E.2d 677 (1997). Therefore, "[w]hether an employer-employee relationship existed at the time of the injury is to be determined by the application of ordinary common law tests." *McCown v. Hines*, 353 N.C. 683, 686, 549 S.E.2d 175, 177 (2001). The first step in determining "whether an employer-employee relationship exists [is] . . . '[w]hat are the terms of the agreement—that is, what was the contract between the parties[?]' " *Huntley v. Howard Lisk Co., Inc.*, 154 N.C. App. 698, 702, 573 S.E.2d 233, 235 (2002) (emphasis in original) (alterations added) (quoting *Askew v. Leonard Tire Co.*, 264 N.C. 168, 172, 141 S.E.2d 280, 283 (1965)).

Although there appears to be no specific statutory basis for the Larson test, we find authority for the test in the common law doctrine of fraud in the inducement, the elements of which closely parallel those suggested by Professor Larson.

> The essential elements of fraud in the inducement are: (i) that defendant made a false representation or concealed a material fact he had a duty to disclose; (ii) that the false representation related to a past or existing fact; (iii) that defendant made the representation knowing it was false or made it recklessly without knowledge of its truth; (iv) that defendant made the representation intending to deceive plaintiff; (v) that plaintiff reasonably relied on the representation and acted upon it; and (vi) plaintiff suffered injury.

*Harton v. Harton*, 81 N.C. App. 295, 298-99, 344 S.E.2d 117, 119-20, *disc. rev. denied*, 317 N.C. 703, 347 S.E.2d 41 (1986). Fraud in the inducement renders a contract void, *see Clifford v. River Bend Plantation, Inc.*, 312 N.C. 460, 464, 323 S.E.2d 23, 25 (1984), and it is axiomatic that the employer-employee relationship is one based in principles of contract. *See Edwards v. Seaboard & Roanoke R.R. Co.*, 121 N.C. 490, 28 S.E. 137 (1897) (recognizing the contractual nature of the employment relationship). Therefore, fraud in the inducement of employment would render the employment contract void. In the absence of a valid employment contract, a claimant would fail to meet the statutory definition of an "employee" and therefore would lack standing under the Workers' Compensation Act. As explained by the Supreme Court of Alabama,

**FREEMAN v. J.L. ROTHROCK**

[189 N.C. App. 31 (2008)]

[i]t is not a usurpation of the legislative function for this Court to conclude that misrepresentation on an employment application as to prior physical injuries is a bar to recovery of worker's compensation benefits. . . . [I]t has long been a part of the common law that fraud in the inducement is a good defense to an action on a contract by one of the contracting parties. That worker's compensation bears a contractual relationship is no longer arguable. Thus, we hold that if the evidence supports a finding that an employee, in entering into the employment relationship, intentionally misrepresented the existence of a prior injury, then that material misrepresentation, if relied upon by the employer, will bar a claim for worker's compensation benefits if the employer can establish a causal relationship between the misrepresentation and the injury.

*Ex Parte S. Energy Homes, Inc.,* 603 So. 2d 1036, 1039 (Ala. 1992) (per curiam) (internal citations omitted). *But see Hilt Truck Lines, Inc. v. Jones,* 281 N.W.2d 399, 403 (Neb. 1979) (finding that such misrepresentations render an employment contract voidable, not void).

We also find support for adoption of the Larson test in the common law doctrine of equitable estoppel. *See, e.g., Lamay v. Roswell Indep. Sch. Dist.,* 882 P.2d 559, 564 (N.M. Ct. App. 1994) ("We believe that the Larson rule derives its essential ingredients from the principle of equitable estoppel rather than contract law."). *But see Stovall v. Sally Salmon Seafood,* 757 P.2d 410, 416 (Or. 1988) (noting that most of the cases adopting the Larson test "do not mention estoppel but discuss whether the claimant must be barred from recovery by reason of fraud or misrepresentation"). In fact, some courts have looked to *both* fraud and estoppel in adopting the Larson test. *See Divita v. Hopple Plastics,* 858 S.W.2d 214, 215 (Ky. Ct. App. 1993) ("What seems to be emerging, in place of a conceptual approach relying on purely contractual tests, is a common-sense rule made up of a melange of contract, causation, and estoppel ingredients." (internal quotation marks and citation omitted)).[3] In North Carolina, " '[t]he law of estoppel applies in [workers'] compensation proceedings as in all other cases.' " *Watkins v. Cent. Motor Lines, Inc.,* 279 N.C. 132, 139, 181 S.E.2d 588, 593 (1971) (alterations added) (quoting *Biddix v. Rex Mills, Inc.,* 237 N.C. 660, 665, 75 S.E.2d 777, 781 (1953)); *see also Gore v. Myrtle/Mueller,* 362 N.C. 29, 37, 653 S.E.2d 400, 408 (2007)

---

3. The Larson test was codified in Kentucky shortly after *Divita* was issued. *See* Ky. Rev. Stat. Ann. § 342.165(2).

(noting "the general permissibility of estoppel under our workers' compensation law"). As our Supreme Court has explained,

> "[t]he doctrine of equitable estoppel is based on an application of the golden rule to the everyday affairs of men. It requires that one should do unto others as, in equity and good conscience, he would have them do unto him, if their positions were reversed. . . . Its compulsion is one of fair play."

*Watkins*, 279 N.C. at 139, 181 S.E.2d at 593 (omission in original) (quoting *McNeely v. Walters*, 211 N.C. 112, 113, 189 S.E. 114, 115 (1937)); *see also Fed. Copper & Aluminum Co. v. Dickey*, 493 S.W.2d 463, 464 (Tenn. 1973) ("A wrongdoer is precluded from profiteering from his fraud or wilful misrepresentation in an ordinary civil suit.").

Furthermore, we note that the Larson test has been adopted by numerous state courts,[4] and as the Virginia Court of Appeals explained over twenty years ago, the Larson test "constitutes the majority view in this country." *McDaniel v. Colonial Mech. Corp.*, 350 S.E.2d 225, 227 (Va. Ct. App. 1986).[5] Additionally, notwithstanding

---

4. *See, e.g., Shippers Transp. of Ga. v. Stepp*, 578 S.W.2d 232, 233 (Ark. 1979) (en banc); *Ex Parte S. Energy Homes, Inc.*, 603 So. 2d at 1039; *Air Mod Corp. v. Newton*, 215 A.2d 434, 440 (Del. 1965); *Martin Co. v. Carpenter*, 132 So. 2d 400, 404 (Fla. 1961); *Ga. Elec. Co. v. Rycroft*, 378 S.E.2d 111, 114 (Ga. 1989); *Divita*, 858 S.W.2d at 215; *Shaw's Supermarkets, Inc. v. Delgiacco*, 575 N.E.2d 1115, 1119 (Mass. 1991); *Jewison v. Frerichs Constr.*, 434 N.W.2d 259, 261 (Minn. 1989) (en banc); *Hilt Truck Lines, Inc.*, 281 N.W.2d at 403; *Sanchez v. Mem. Gen. Hosp.*, 798 P.2d 1069, 1071 (N.M. Ct. App.), *cert. denied*, 798 P.2d 1039 (N.M. 1990); *Cooper v. McDevitt & Street Co.*, 196 S.E.2d 833, 835 (S.C. 1973); *Oesterreich v. Canton-Inwood Hosp.*, 511 N.W.2d 824, 828 (S.D. 1994); *Fed. Copper & Aluminum Co.*, 493 S.W.2d at 465; *McDaniel v. Colonial Mech. Corp.*, 350 S.E.2d 225, 227 (Va. Ct. App. 1986); *Volunteers of Am. v. Indus. Comm'n*, 141 N.W.2d 890, 895 (Wis. 1966); *Long v. Big Horn Constr. Co.*, 295 P.2d 750, 754 (Wyo. 1956). *See generally* Tracy A. Bateman, *Eligibility for Workers' Compensation as Affected by Claimant's Misrepresentation of Health or Physical Condition at Time of Hiring*, 12 A.L.R. 5th 658 (1993); William J. Collins III, *An Exception for Deception: Why McKennon Should not be Extended to Employment Application Misrepresentations of Pre-Existing Injuries*, 37 S. Tex. L. Rev. 779, 809-10 (1996).

5. In referencing Virginia caselaw, we note that "at the time the general assembly adopted the North Carolina Workmen's Compensation Act it had before it the Virginia Workers' Compensation Act. The Virginia act was identical to the bill originally presented to the North Carolina general assembly . . . ." J. Cameron Furr, Jr., Whitley v. Columbia Lumber Manufacturing Co.: *Abolishing the Exclusive Remedy Requirement for the Scheduled Injuries Section of the North Carolina Workers' Compensation Act*, 66 N.C. L. Rev. 1365, 1369 (1988). Our Act's similarity to Virginia's statute has survived the decades since its enactment. *Cf. Joyce v. A.C. & S., Inc.*, 785 F.2d 1200, 1207 (4th Cir. 1986) ("The Virginia Workers' Compensation Act was modeled after the analogous statute in Indiana."); *Riley v. Debaer*, 149 N.C. App. 520, 528, 562 S.E.2d 69, 73 (2002) (Eagles, C.J., dissenting) ("The Indiana . . . workers' compensation act[] [is] substantially similar to our Act.").

**FREEMAN v. J.L. ROTHROCK**

[189 N.C. App. 31 (2008)]

plaintiff's arguments with respect to judicial legislation, "[a] major-
ity of the states that have considered this issue have *judicially*
recognized intentional misrepresentation to gain employment as an
affirmative defense even in the absence of a specific statute."
*Oesterreich v. Canton-Inwood Hosp.*, 511 N.W.2d 824, 828 (S.D. 1994)
(emphasis added).[6]

For over the last eighteen years, North Carolina has been sur-
rounded by states that have adopted the defense. *See Ga. Elec. Co.*,
378 S.E.2d at 114; *Cooper*, 196 S.E.2d at 835; *Fed. Copper &
Aluminum Co.*, 493 S.W.2d at 465; *McDaniel*, 350 S.E.2d at 227.[7]
However, we refuse to continue to countenance fraud perpetrated
upon employers in our state, and as aptly noted by the South Dakota
Supreme Court, intentional misrepresentations during the hiring
process as to a prior medical condition "is the type of conduct which
cannot be rewarded through any liberal interpretation of the worker's
compensation laws." *Oesterreich*, 511 N.W.2d at 828-29; *see also
Dressler*, 262 N.W.2d at 684 (Coleman, J., dissenting) ("The intriguing
effect of my colleague's opinion is that it now legally pays to lie—and
it is the consumer who bears the cost."). Accordingly, we are per-
suaded that the three-pronged Larson test for misrepresentations
made by a prospective employee at the time of hiring with respect to
his or her medical condition, with the burden of proving each of the
prongs resting with the employer, is suitable for application in the
instant case.

---

6. Several courts, however, have held—or at least implied—that the Larson test
must be adopted legislatively, rather than judicially. *See, e.g., Marriott Corp. v. Indus.
Comm'n*, 708 P.2d 1307, 1312 (Ariz. 1985) (en banc); *Kraus v. Artcraft Sign Co.*, 710
P.2d 480, 482 (Colo. 1985) (en banc); *Teixeira v. Kauikeolani Children's Hosp.*, 652
P.2d 635, 636 (Haw. Ct. App. 1982); *Dressler v. Grand Rapids Die Casting Corp.*, 262
N.W.2d 629, 634 (Mich. 1978); *Goldstine v. Jensen Pre-Cast*, 729 P.2d 1355, 1356 (Nev.
1986); *Akef v. BASF Corp.*, 658 A.2d 1252, 1255-56 (N.J. 1995); *Harris v. Syracuse
Univ.*, 564 N.Y.S.2d 227, 228 (N.Y. App. Div. 1990); *H.J. Jeffries Truck Line v. Grisham*,
397 P.2d 637, 643 (Okla. 1964); *Stovall*, 757 P.2d at 417; *Blue Bell Printing v. Workmen's
Comp. Appeal Bd.*, 539 A.2d 933, 936 (Pa. Commw. Ct. 1988); *see also State Dep't of
Highways & Pub. Transp. v. Thrasher*, 805 S.W.2d 798, 800 (Tex. Ct. App. 1990)
(declining to extend the misrepresentation defense to all injuries when the legislature
only provided for a misrepresentation defense with respect to occupational diseases).

7. The North Carolina's Workers' Compensation Act was enacted contemporane-
ously with the analogous statutes as originally enacted in these states—Virginia in
1918, Tennessee in 1919, Georgia in 1920, and South Carolina in 1936. It also is notable
that South Carolina, which has adopted the Larson test, modeled their worker's com-
pensation statute after North Carolina's statute. *See Pressley v. REA Constr. Co., Inc.*,
648 S.E.2d 301, 304 (S.C. Ct. App. 2007) ("Inasmuch as our Worker's Compensation Act
is modeled after the North Carolina Act, we naturally look to North Carolina's deci-
sions in interpreting similar provisions.").

Applying the Larson test to the case *sub judice*, defendants had the burden first to demonstrate that plaintiff knowingly and wilfully made a false representation as to his physical condition at the time he was hired. In finding of fact number 10, the Full Commission found as fact that plaintiff misrepresented his physical condition at the time of hiring:

> In completing the medical questionnaire, plaintiff made no reference to prior back injuries he had had or to workers' compensation claims associated with those injuries. While his responses to most of the questions were either accurate or ambiguous, the negative answers to the direct questions as to whether he had ever had a backache or made a workers' compensation claim were *clearly incorrect.*

(Emphasis added). Although this finding arguably is insufficient for a determination that plaintiff's false representation was knowingly and wilfully made, plaintiff nevertheless concedes in his brief "that the first criterion on [sic] Larson's test was satisfied."

With respect to the second prong of the Larson test, defendants had the burden of demonstrating that defendant-employer relied upon plaintiff's false representation and that its reliance was a substantial factor in the hiring. Here, the Full Commission found that Gerald Robertson ("Robertson"), defendant-employer's safety and recruiting director, "testified that plaintiff would have been hired and given the job, even if he had answered all the questions accurately. Robertson further testified that the question about prior worker's [sic] compensation claims was superfluous."

First, we agree with the Full Commission's characterization of the question concerning prior workers' compensation claims. Robertson testified that as of 25 July 2003, defendant-employer had approximately seventeen employees with prior workers' compensation claims. Robertson further testified: "As far as previously being hired, as long as it doesn't affect their ability to perform positions that we have available, we don't really take that into consideration." Additionally, the following colloquy transpired between plaintiff's attorney and Robertson:

> [PLAINTIFF'S ATTORNEY]: I believe, Mr. Robertson, you said that—that if somebody had answered "yes" to the workers' comp claim question, then you'd go back to some other part of the—of

FREEMAN v. J.L. ROTHROCK

[189 N.C. App. 31 (2008)]

the form and look at the physical condition· he's talking about with respect to the workers' comp claim. And the question I have is what does the fact that that injury was the result of a workers' comp claim do to change—change his physical condition when you're trying to assess his ability to do the job?

[ROBERTSON]:  Probably nothing.

[PLAINTIFF'S ATTORNEY]:  So that's sort of a surplus question?

[ROBERTSON]:  Well, it could be, I suppose, but we would certainly want to know what he had hurt on his self to make sure that we were not going to place him into some type of a job position that he would get hurt again.

[PLAINTIFF'S ATTORNEY]:  But you'd get that information from all the other questions except for [the question on prior workers' compensation claims], is that accurate?

. . . .

[ROBERTSON]:  In most cases, yes.

Accordingly, the Full Commission's finding that "the question about prior worker's [sic] compensation claims was superfluous" was supported by competent evidence.

However, we disagree with the Full Commission's finding that defendant-employer did not rely upon the false representations made by plaintiff in hiring plaintiff. Robertson was asked point-blank whether defendant-employer would have hired plaintiff had plaintiff disclosed his work restrictions:

[DEFENDANTS' ATTORNEY]:  Mr. Robertson, assuming that the medical evidence that's admitted in this case shows that [plaintiff] was limited to a light to medium demand level indicating he could lift thirty-five pounds occasionally, fifteen pounds frequently, seven pounds continuously, was limited to occasional sitting . . . which indicates only a third of the day should be spent sitting, if you had known of these prior restrictions, would you have hired [plaintiff] to perform a job as a truck driver?

[ROBERTSON]:  No.

Robertson further noted that "[i]t would have been very difficult . . . to make reasonable accommodations for [plaintiff] . . . because of

the driving restrictions for one, and secondly, not knowing when—specifically when and where or if a driver is going to be required to load and/or unload and/or what type of product that that would even involve."

The Full Commission appears to have based its finding on one line of Robertson's testimony, during which he equivocated on the issue:

[PLAINTIFF'S ATTORNEY]: So is it your testimony that you don't know what you would have done, or is it your testimony that you would not have hired him to drive for Rothrock, or is it your testimony that you would have allowed him to drive for Rothrock?

[ROBERTSON]: It's very—I feel this is very a [sic] hypothetical. I suppose I would have hired him. I don't know.

[PLAINTIFF'S ATTORNEY]: Okay, thank you.

However, Robertson immediately thereafter clarified his answer:

[ROBERTSON]: I did hire him. Based upon no information, I hired him.

[PLAINTIFF'S ATTORNEY]: But I asked you the question concerning if you had had the information that you think is full information and I believe your answer was that you probably would have hired him anyway, is that correct?

[ROBERTSON]: Again, it's a hypothetical question. I don't know what I would have done.

[PLAINTIFF'S ATTORNEY]: Well, it's not hypothetical because you now have the information. *If you had the information then that you have now concerning his prior back problems as.you perceive them, would he have been hired or not?*

[ROBERTSON]: *Probably not.*

[PLAINTIFF'S ATTORNEY]: Probably not?

[ROBERTSON]: Probably not.

(Emphases added). Later in his testimony, Robertson elaborated on defendant-employer's reliance on plaintiff's honesty with respect to plaintiff's physical condition, stating, "We hired him based on—from what he told us in his application and on these forms that he filled out about his limitations . . . . That's what we hired him on." Finally,

FREEMAN v. J.L. ROTHROCK

[189 N.C. App. 31 (2008)]

Robertson stated unequivocally at the end of his testimony that defendant-employer would not have hired plaintiff but for plaintiff's false representations as to his prior medical condition:

[DEFENDANT'S ATTORNEY]: [I]f [plaintiff] had indicated to you he was physically able to perform the job but those medical restrictions were in place, what would your decision have been regarding [plaintiff]'s employment?

[ROBERTSON]: I would not have hired him.

The evidence presented to the Full Commission demonstrates that defendant-employer relied upon plaintiff's false representation and that defendant-employer's reliance was a substantial factor in the hiring. The Full Commission, therefore, erred in finding that defendant-employer did not rely upon plaintiff's misrepresentations.

Finally, defendants had the burden under the third prong of the Larson test to demonstrate the existence of a causal connection between the false representation and the injury. The Full Commission stated in finding of fact number 12 that "Doctors Ramos, Aluiso, and Rogers all testified, and the Full Commission finds as fact, that plaintiff's prior back problems did not increase his risk of sustaining the type of injury he sustained on March 11, 2002." This finding, however, is not supported by competent evidence.

First, Dr. Richard D. Ramos ("Dr. Ramos") testified that he could not state with any certainty whether plaintiff's 11 March 2002 injury was an aggravation of a prior injury or a new injury. Regardless, Dr. Ramos testified that plaintiff was "definitely at risk for reinjury in his lower back" as a result of his prior injuries. Dr. Ramos explained that plaintiff probably should have stayed away from a truck driving job, noting that such a job would be "a more strenuous job than the light-medium level" work restrictions to which plaintiff was assigned and that working outside assigned restrictions may place an employee "at an increased risk for additional injury or aggravation." Dr. Ramos further explained that "somebody with [plaintiff]'s condition who performs a heavy-duty job such as this for a 19-month period . . . can [absolutely] make them [sic] more susceptible to another injury." Finally, Dr. Ramos testified that the type of activity in which plaintiff was engaging for defendant-employer "certainly could" aggravate plaintiff's condition.

Next, Dr. Frank V. Aluiso ("Dr. Aluiso") was asked during his deposition why work restrictions are assigned to persons with a

back condition, such as that experienced by plaintiff. Dr. Aluiso explained that

> [p]art of it is that there's, with a degenerative disk or bulging disk, there would be a higher risk for recurrent back injuries if they're on a job that has no restrictions with respect to the amount they lift or how frequently they're lifting. They're just more prone to getting a recurrent back injury.

Dr. Aluiso then noted that by returning to a truck-driving job, plaintiff was working outside his work restrictions. He further explained that by returning to a "heavy-duty truck-driving job" after the 1996 incident, plaintiff placed himself "at high risk for reinjuring himself." Dr. Aluiso noted that the fact that plaintiff worked for nearly two years without incident was not dispositive with respect to the likelihood of injury. Specifically, he explained that plaintiff "had documented evidence of degenerative disk as well as bulging disk, so he could reinjure himself at any time. It doesn't matter if it's a year or five years. It could be anytime." Dr. Aluiso opined that any number of activities, including pushing, pulling, lifting, cranking, and driving, could aggravate plaintiff's back condition.[8] Ultimately, contrary to the Full Commission's finding, Dr. Aluiso testified that plaintiff "was at increased risk of having problems in his back" and that it was "likely with [plaintiff's] condition that an exacerbation would have occurred at some point."

Testimony by Dr. Tate Rogers ("Dr. Rogers") also demonstrates that plaintiff's prior back injury increased his risk of sustaining the 11 March 2002 injury or aggravation, thereby contradicting the Full Commission's finding of fact. Although plaintiff quotes Dr. Rogers as explaining that it would be speculative to say that the heaviness of plaintiff's other work activities increased the risk of injury while cranking the dolly, the issue is not whether other aspects of the job increased his risk of injury, but whether his undisclosed medical condition increased his risk of injury. *See* 3 *Larson's Workers' Compensation Law* § 66.04 (2006) ("There must have been a causal connection *between the false representation and the injury.*"

---

8. Plaintiff contends that Dr. Aluiso only testified that plaintiff had an increased risk of injury due to lifting, as opposed to cranking a dolly, and that Dr. Aluiso acknowledged that plaintiff's work restrictions did not mention turning a hand crank. Dr. Aluiso, however, responded to a question concerning the risk posed by a cranking motion by saying that "if there's a lot of pushing and pulling, that's an activity that could also aggravate the back." Later in his deposition, Dr. Aluiso stated that "lifting up to 70 pounds, a lot of bending and stooping, [and] *the operating of the crank . . .* most likely" would have exacerbated plaintiff's condition at some point. (Emphasis added).

(emphasis added)). Dr. Rogers clearly provided his opinion on this issue:

> [DR. ROGERS]: . . . But I would tend to agree that, given his back condition, truck driving would not be the best type of work for him to be doing.
>
> [DEFENSE COUNSEL]: And so assuming that an orthopedist in 1996 made that recommendation, you would be inclined to concur with that?
>
> [DR. ROGERS]: I would, yes.
>
> [DEFENSE COUNSEL]: And would, in your opinion, a recommendation such as that back in 1996, does that reflect the fact that if he were to return to a truck-driving position, he was at a higher risk of reinjury?
>
> [DR. ROGERS]: In my opinion, yes.
>
> [DEFENSE COUNSEL]: And if after the—[plaintiff] has actually had two prior work injuries in '92 and '96. And if after the 1996 incident, [plaintiff] was to return to a heavy duty or strenuous truck-driving position and suffered an injury, would that be something you would see as foreseeable based upon his condition?
>
> [DR. ROGERS]: I don't know if you can say it's "foreseeable." *You can certainly say he was at increased risk for it. He would definitely be at increased risk, and then I wouldn't be surprised if he did suffer a back injury;* but I couldn't predict a back injury.

(Emphasis added). Dr. Rogers also agreed with Dr. Aluiso's assessment that plaintiff's injury or aggravation could have happened at any time and that the nearly two years of injury-free work did not alter the fact that plaintiff was at an increased risk for injury. Specifically, Dr. Rogers stated that "[a] person can have a ruptured lumbar disk for 30 years and work for 30 years and never have any trouble out of it, but that doesn't change the fact that they're still—they're in a high-risk group. They just happen to luck out."

Although the Full Commission found that plaintiff's prior back problems did not increase his risk of the 11 March 2002 injury, this finding was not supported by competent evidence. Dr. Ramos, Dr. Aluiso, and Dr. Rogers all testified to the effect that plaintiff's undisclosed medical condition increased his risk of the back injury at issue. Additionally, we note, as did the Tennessee Supreme Court,

that "[c]ommon sense dictates that a prior injury of the nature suffered by defendant would create a predisposition to further injury considering the nature of the work involved." *U.S. Fid. & Guar. Co. v. Edwards*, 764 S.W.2d 533, 536 (Tenn. 1989). Defendants, therefore, satisfied the third and final prong of the Larson test.

Because defendants satisfied their burden of proof under the Larson test, plaintiff is barred from workers' compensation benefits for his injury sustained on 11 March 2002. Accordingly, the Full Commission erred in awarding workers' compensation benefits to plaintiff. Additionally, because we reverse the Opinion and Award of the Full Commission, we need not reach defendants' remaining assignments of error. *See Demery v. Perdue Farms, Inc.*, 143 N.C. App. 259, 267, 545 S.E.2d 485, 491, *aff'd*, 354 N.C. 355, 554 S.E.2d 337 (2001) (per curiam).

Reversed and Remanded.

Judge Hunter concurs.

Judge Wynn dissents in a separate opinion.

WYNN, Judge, dissenting.

In this case, the majority adopted the *Larson* test and in applying the test, concluded that Mr. Freeman is barred from receiving workers' compensation benefits for his injury because of his misrepresentations at the time of his hiring. Because I disagree with the adoption of the *Larson* test, I respectfully dissent.

In published and unpublished opinions, this Court has rejected the *Larson* test. In *Hooker*, the defendants argued that this Court should adopt a misrepresentation defense in workers' compensation cases. *Hooker v. Stokes-Reynolds Hosp.*, 161 N.C. App. 111, 115, 587 S.E.2d 440, 443 (2003), *disc. review denied*, 358 N.C. 234, 594 S.E.2d 192 (2004). In response, this Court stated that "neither the Industrial Commission nor this Court has the authority to adopt such a defense, if it is not found in the Worker's Compensation Act. Our Supreme Court 'has warned against any inclination toward judicial legislation' in the construction of the Worker's Compensation Act." *Id.* (citation omitted).

Additionally, as the majority concedes, this Court has rejected the *Larson* test in an unpublished opinion. In *McCollum v. Atlas Van*

*Lines*, the defendants urged this Court to adopt the three-part *Larson* test to bar workers' compensation recovery where an employee made misrepresentations about his physical condition. *McCollum v. Atlas Van Lines*, 166 N.C. App. 280, 603 S.E.2d 167 (unpublished, Sept. 7, 2004), *disc. review denied*, 359 N.C. 190, 607 S.E.2d 276 (2004). This court cited *Hooker* as the basis for the rejection of the *Larson* test, and concluded that "defendants' . . . argument is without merit." *Id.*

Not only have we previously rejected the *Larson* test, there is no legislative authority for this Court to adopt such a test. Our Supreme Court has stated:

> With respect to interpreting the Workers' Compensation Act, this Court has warned against any inclination toward judicial legisla-tion . . . . This Court has long distinguished between liberal con-struction of statutes and impermissible judicial legislation or the act of a court in "ingrafting upon a law something that has been omitted, which [it] believes ought to have been embraced."

*Johnson v. Southern Indus. Constructors, Inc.*, 347 N.C. 530, 536, 495 S.E.2d 356, 359-60 (1998) (citations omitted). Because the *Larson* test is not included in our Workers' Compensation Act, the adoption of the test by this Court is impermissible judicial legislation. Accordingly, I must dissent.