***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Donovan and the briefs and oral arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives and having reviewed the competent evidence of record, the Full Commission AFFIRMS the Opinion and Award of Deputy Commissioner Donovan with minor modifications.
 ***********
The pleadings of the parties and the evidence of record establishes the following: *Page 2 
 ISSUES
1. Whether Plaintiff suffered a temporary exacerbation of a preexisting condition as a result of a compensable injury on April 8, 2008.
2. If so, to what benefits is he entitled?
3. Whether Plaintiff's claim is barred due to providing false statements at the time of hiring.
 ***********
The parties entered into the following Findings of Fact and Conclusions of Law as:
 STIPULATIONS
1. The employee is Michael Palmer.
2. The employer is Triad Construction Services.
3. The carrier is Stonewood Insurance Company.
4. At all relevant times, Defendant-Employer regularly employed three or more employees and was bound by the North Carolina Workers' Compensation Act. An employer-employee relationship existed between Defendant-Employer and Plaintiff on April 8, 2008 and the Industrial Commission has jurisdiction over the parties and subject matter.
5. Plaintiff's average weekly wage was $540.82, which yields a compensation rate of $360.56 per week, pursuant to a stipulation agreed upon by the parties subsequent to the hearing.
 ***********
The following documents were stipulated into evidence as:
 EXHIBITS *Page 3 
1. Stipulated Exhibit #1: Medical records, I.C. Forms, discovery responses, recorded statement, personnel file, employment security commission documents and correspondence.
 ***********
All of the competent evidence of record engenders the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, Plaintiff was 27-years old. Plaintiff worked for Defendant-Employer on two separate occasions. Initially, Plaintiff was hired in 2005 and worked until leaving to accept a higher paying position at Caylor Concrete. Plaintiff was rehired by Defendant-Employer in March 2007. Plaintiff worked as a laborer with both Defendant-Employer and Caylor Concrete.
2. In June 2006, Plaintiff sustained a compensable lower back injury while working at Caylor Concrete. Plaintiff treated for his back injury with Dr. Max W. Cohen at Greensboro Orthopaedic Center. Plaintiff underwent two separate MRIs of his lumbar spine. The first MRI, performed in July 2006, revealed degenerative disk disease with a shallow disk bulge at L4-5 and an annular tear at L5-S1.
3. Dr. Cohen repeated the MRI in November 2006 because of Plaintiff's ongoing complaints of "ten out of ten pain" which were not supported by the first MRI. The second MRI revealed a broad based L4-5 disk herniation, causing significant spinal stenosis. Dr. Cohen discussed the possibility of surgery with Plaintiff, but noted that pain would likely persist post surgery due to Plaintiff's degenerative disk disease.
4. Throughout his treatment of Plaintiff, Dr. Cohen maintained light duty work restrictions of no lifting over 15 pounds. On December 6, 2006, Plaintiff presented to Dr. Cohen's *Page 4 
office and requested an out of work note. Plaintiff informed Dr. Cohen's staff that he had presented to an emergency room for a pain shot because he "fell out" at work. Dr. Cohen informed Plaintiff that his light duty work restrictions were safe so long as he did not lift more than 15 pounds.
5. Dr. Cohen ultimately concluded that surgery may worsen Plaintiff's symptoms; therefore, he imposed a 5% permanent partial impairment rating and released Plaintiff at maximum medical improvement with restrictions. The restrictions assigned are "no lifting more than 15 pounds, occasional bending, stooping and squatting." Dr. Cohen and Plaintiff specifically discussed employment capability. Dr. Cohen informed Plaintiff that it was unlikely he could return to work in his previous position. Dr. Cohen provided Plaintiff the permanent restrictions in writing. The permanent restrictions remain applicable.
6. Matt Walraven, project manager for Defendant-Employer, and Plaintiff discussed the possibility of Plaintiff returning to work for the Defendant-Employer in December, 2006. Walraven advised the Plaintiff that once his back had healed, he would give Plaintiff another opportunity to work for Defendant-Employer.
7. In March 2007, Plaintiff contacted Walraven requesting reemployment. Walraven specifically asked Plaintiff whether he had been released for full duty work, and Plaintiff falsely stated that he had been given a full duty work release.
8. Plaintiff was reemployed by Defendant-Employer and on April 8, 2008, Plaintiff was working on a project and digging holes with a hole-digger, a hand-held tool consisting of two prongs used to dig holes for posts. While digging, Plaintiff felt a sharp pain and "pop" in his lower back. He immediately informed his supervisor and was taken to the emergency room by a co-employee. *Page 5 
9. Plaintiff was treated by the emergency room and diagnosed with lumbago and a lower back strain. He was prescribed medications and referred to Dr. Mark Rowley, an orthopaedist in High Point.
10. Plaintiff presented to Dr. Rowley on April 15, 2008. Plaintiff informed Dr. Rowley that he injured his lower back while digging at work. Plaintiff did not inform Dr. Rowley of his pre-existing back problems nor that he had been treated for a prior injury which resulted in the receipt of permanent work restrictions.
11. Dr. Rowley opined that Plaintiff's x-rays were negative and diagnosed Plaintiff with a lumbar sprain. Plaintiff was removed from work for three weeks. On May 6, 2008, Dr. Rowley returned Plaintiff to light duty work, with no repetitive squatting, bending or lifting greater than 15 pounds. Dr. Rowley's May 6, 2008 restrictions were essentially the same as those imposed by Dr. Cohen in December 2006. Upon learning of the permanent restrictions, Dr. Rowley opined that Plaintiff had returned to his baseline position as of May 6, 2008.
12. On May 7, 2008, Plaintiff presented to Dr. Anthony Hayes, a family practitioner, upon the recommendation of his father. Dr. Hayes removed Plaintiff from work for two weeks and instructed Plaintiff to follow-up with him on May 21, 2008. Plaintiff did not appear on May 21, 2008, but next presented to Dr. Hayes on June 17, 2008. Dr. Hayes recommended that Plaintiff undergo an MRI and took Plaintiff out of work through July 15, 2008.
13. The MRI was performed on July 3, 2008, and revealed degenerative changes at L4/L5 and L5/S1, along with non-compressive protrusions at L4/L5 and L5/S1. Plaintiff did not inform Dr. Hayes of his permanent work restrictions, his prior workers' compensation injury or the 2006 MRI. Upon being shown the 2006 MRI report, Dr. Hayes opined that the 2008 MRI actually showed improvement in Plaintiff's condition. *Page 6 
14. Plaintiff returned to Dr. Rowley on August 1, 2008. Dr. Rowley reviewed Plaintiff's MRI and noted diffuse degenerative disk changes at the lower levels, but no disk herniation or fractures. Dr. Rowley released Plaintiff to return to work with a 25 pound lifting restriction. Dr. Rowley released Plaintiff with a final diagnosis of low back pain secondary to degenerative disk disease, aggravated by work-related strain. Dr. Rowley opines that any work related aggravation had subsided and returned to baseline by May 6, 2008.
15. Plaintiff has received unemployment benefits since May 31, 2008. Plaintiff certified that he has been ready, willing and able to work since at least May 18, 2008.
16. Plaintiff suffered an injury as the result of a specific traumatic incident of the work assigned on April 8, 2008. As a result of the incident, Plaintiff suffered a temporary aggravation of a previously existing condition.
17. As a result of the temporary exacerbation of Plaintiff's previous condition, he became temporarily totally disabled from employment.
18. Based upon the greater weight of the expert medical evidence presented, the Full Commission finds that by May 6, 2008, Plaintiff had recovered from the temporary aggravation of his previous condition caused by the specific traumatic incident of April 8, 2008, and any continuing disability was the result of his prior condition and not attributable to the April 8, 2008 work-related injury.
19. Plaintiff's average weekly wage was $540.82, which yields a compensation rate of $360.56 per week.
 ***********
The foregoing Stipulations and Findings of Fact engender the following:
 CONCLUSIONS OF LAW *Page 7 
1. Plaintiff sustained a temporary exacerbation of a previous work related injury as the result of a specific traumatic incident on April 8, 2008. N.C. Gen. Stat. § 97-2(6).
2. Defendant-Employers's contention that the April 8, 2008 injury caused a temporary aggravation of a previous work related injury is well taken. The greater weight of the medical evidence establishes that Plaintiff's temporary exacerbation had resolved by May 6, 2008. As a result of the temporary exacerbation, Plaintiff is entitled to temporary total disability compensation at the rate of $360.56 per week for the period from April 8, 2008 through May 6, 2008, when he returned to his baseline condition. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to have Defendant pay for medical expenses incurred between April 8, 2008 and May 6, 2008 as a result of the compensable injury as may be required to provide relief, effect a cure or lessen the period of disability, subject to the statute of limitations prescribed in N.C. Gen. Stat. § 97-25.1. N.C. Gen. Stat. § 97-2(19). Any subsequent medical treatment is deemed to be related to Plaintiff's prior condition and is not causally related to the April 8, 2008 work-related injury.
4. Defendant-Employer's argument that the Court of Appeals decision in Freeman v. Rothrock,189 N.C. App. 31, 657 S.E.2d 389 (2008), rev'd,363 N.C. 249, 676 S.E.2d 46 (2009) precludes Plaintiff from any benefits under the Act is misplaced. The decision of the Court of Appeals was reversed by the North Carolina Supreme Court.
 ***********
The foregoing Stipulations, Findings of Fact and Conclusions of Law engender the following:
 AWARD *Page 8 
1. Subject to a reasonable attorney's fee herein approved, Defendants shall pay temporary total disability compensation to Plaintiff at the rate of $360.56 per week for the period from April 8, 2008 through May 6, 2008. As said compensation has accrued, it shall be paid in a lump sum.
2. A reasonable attorney's fee of 25% of the compensation awarded to Plaintiff's counsel from the disability benefits awarded in Paragraph 1. The approved attorney fee shall be paid by Defendant deducting the amount from the sums due the Plaintiff and paying the same directly to Plaintiff's counsel.
3. Defendants shall pay medical expenses incurred between April 8, 2008 and May 6, 2008, when medical bills have been submitted according to established Industrial Commission procedures.
4. Defendants shall pay the costs.
This the __ day of December 2009.
 S/___________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/___________________ STACI T. MEYER *Page 9 
COMMISSIONER *Page 1