***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Phillips and the briefs and arguments of the parties. The appealing party has shown good grounds to reconsider the evidence and having reviewed the competent evidence of record, the Full Commission AFFIRMS the Opinion and Award of Deputy Commissioner Phillips with substantial modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the parties and Plaintiff's January 26, 2004 workers' compensation claim. *Page 2 
2. On January 26, 2004, an Employer-Employee relationship existed between Plaintiff and Defendant-Employer.
3. Defendant-Employer is self-insured. Key Risk Management Services, Inc., is the Third-Party Administrator for Defendant-Employer.
4. On January 26, 2004, Plaintiff sustained a compensable injury to his back in the course and scope of his employment when he slipped on ice/snow entering his place of employment.
5. Defendant-Employer accepted this claim on a Form 60.
6. Subject to evidence produced at the hearing, the Plaintiff's average weekly wage was approximately $2,000, which produced a maximum compensation rate of $688.00.
7. At all times relevant to this claim, including before and after January 26, 2004, Plaintiff was a recipient of Social Security Disability benefits. Plaintiff was on a trial return to work program through the Social Security Administration on January 26, 2004.
 ***********
The following documentary evidence was received as:
 EXHIBITS
1. Stipulated Exhibit 1-Notebook containing Industrial Commission Forms and medical records.
2. Stipulated Exhibit 2-Personnel file of Plaintiff.
3. Stipulated Exhibit 3-Recorded Statement of Plaintiff dated February 9, 2004.
4. Pre-Trial Agreement entered into between the parties.
 DEPOSITIONS *Page 3 
1. Deposition of Laura Fleck, M.D. taken on January 28, 2008.
2. Deposition of Terence E. Fitzgerald, Ph. D. taken on January 28, 2008.
3. Deposition of J. Christopher Caston, M.D. taken on February 14, 2008.
4. Deposition of Luther A. Diehl, Ph.D. taken on February 14, 2008.
 *********** ISSUES
The following issues were before the Full Commission for determination:
1. Whether Plaintiff is permanently and totally disabled from employment within the meaning of N.C. Gen. Stat. § 97-29.
2. Whether Plaintiff is entitled to ongoing disability benefits pursuant to the provisions of N.C. Gen. Stat. § 97-29 or entitled to permanent partial disability benefits pursuant to N.C. Gen. Stat. § 97-31.
3. Whether Plaintiff is entitled to ongoing medical compensation for his work-related injuries, and their sequel, pursuant to the provisions of N.C. Gen. Stat. § 97-25 or is Plaintiff precluded from continuing medical benefits for his depression based upon Freeman v. Rothrock, ___ N.C. App. ___, 657 S.E.2d 389 (2008).
 ***********
Based upon all the competent, credible evidence of record and the reasonable inferences therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was a fifty-nine year-old gentleman at the time of hearing before the Deputy Commissioner. Plaintiff is a dentist who has worked sporadically in the field of dentistry for several years. On March 3, 2003, Plaintiff was employed by Defendant-Employer as a dentist at its Marion *Page 4 
Correctional Institution.
2. Plaintiff has been under the psychiatric care of Dr. J. Christopher Caston since the 1980's. Plaintiff stopped practicing dentistry in approximately 1996 because of overwhelming depression related to a problematical private dental practice, his mother's death, and separation from his wife and son. During this time, Plaintiff applied for and was approved for Social Security Disability benefits based upon his depressive disorder.
3. Plaintiff applied for work for the Department of Correction as a trial return to work under Social Security Disability guidelines. In his employment application with the Department of Correction, Plaintiff failed to disclose that he was disabled and on Social Security Disability. In its Brief to the Full Commission, Defendant-Employer contends that (a) Plaintiff's incomplete application implies a candidate in good heath and capable of performing all employment duties as a dentist; (b) it is "highly unlikely" that Defendant-Employer would have hired Plaintiff if the true state of facts had been disclosed; and (c) there is a clear connection between the Plaintiff's misrepresentation of his pre-existing depressive disorder and the injury. Defendant-Employer presented no competent compelling evidence of record that employment would not have been offered had Defendant-Employer known Plaintiff was disabled and receiving Social Security Disability benefits.
4. Plaintiff continues to receive Social Security Disability benefits.
5. In May, 2003, shortly after Plaintiff went to work for Defendant-Employer, he injured his back while playing basketball with his son. From May through August 2003, Plaintiff received conservative care for this back injury. In August 2003, Plaintiff underwent back surgery by Dr. Derian. Plaintiff was taken out of work because of his back surgery. Plaintiff returned to work approximately six weeks later in September 2006. Plaintiff's return to work proved unsuccessful and Dr. Derian medically removed Plaintiff out of work again. Plaintiff returned to work in December 2003. Plaintiff estimated *Page 5 
that he had a ninety to ninety-five percent improvement from his back injury when he returned to work in the December 2003 to January 2004 time period, not missing a single day of work.
6. On January 26, 2004, Plaintiff sustained the low back injury that is the basis of this workers' compensation claim. Plaintiff rode to work with Wanda Tucker, a Dental Assistant, and her husband. Upon exiting their vehicle at the gate entrance to the prison unit, he fell on ice injuring his lower back. Plaintiff did not recall hitting his head in the January 26, 2004 accident; however, he surmised that he must have hit his head based upon subsequent deterioration of his pre-existing depressive disorder and mental faculties.
7. After his fall on January 26, 2004, Plaintiff was taken to Burke Occupational Medicine and examined by Bill Vaassen, PA-C. Vaassen's medical records reflect that Plaintiff presented "after an incident at work when he got out of the car, slipped and came down on his back." Plaintiff complained of pain across the back, without radiation, tingling or numbness. There was generalized tenderness across the lumbar sacral area with negative SLR. No note of a head injury appears in these records.
8. Plaintiff filed his Form 18, Notice of Injury, with assistance of his counsel. The Form 18 describes an injury to the back and right shoulder, but does not describe an injury to his head.
9. Wanda Tucker served as Plaintiff's Dental Assistant at the Marion Correctional Institution. Plaintiff did not mention to her that that he had injured his head. She saw Plaintiff on two occasions after his January 2004 accident. At the second meeting, Plaintiff indicated that he had some debilitating disease that was not related to the work injury.
10. Plaintiff initiated treatment with Dr. Laura Fleck, a Board Certified Neurologist at Spine Carolina, on February 13, 2004. Plaintiff did not report to Dr. Fleck any blow or injury to his head. Dr. Fleck's initial diagnosis was mechanical low back pain, likely of discogenic origin, with an associated *Page 6 
annular tear in his L5-S1 disc. Plaintiff had left sided low back and leg pain attributable to his August 2003 surgery. Plaintiff's post-injury symptoms focused on his low back and right leg. Symptoms from an annular tear typically resolve in six to eight weeks and function progresses over the following four to six weeks.
11. On March 10, 2004, Dr. Fleck referred Plaintiff to the Functional Restorative Program at Spine Carolina. During the program, Dr. Fleck learned that Plaintiff had been under psychiatric care for roughly ten years.
12. The Functional Restorative Program is a multidisciplinary program that included a psychologist, an ergonomic expert, a physical therapist, an occupational therapist, the nurse case manager, nurses and Dr. Fleck. This program's objective was specifically to return Plaintiff to work as a dentist. The intensive program was eight hours a day, five days a week, for one month. Plaintiff's health care providers determined that he required frequent changes of position and Plaintiff was trained to change the position of his chair to avoid overload on his back while working.
13. Plaintiff returned to Dr. Fleck on April 8, 2004. Dr. Fleck found Plaintiff had reached maximum medical improvement from his work related injury and certified a two percent impairment rating to the back. Plaintiff achieved a high light duty level of work capability, a level consistent with his employment with Defendant. After completing the Functional Restorative Program, Plaintiff was physically capable to return to work as a dentist. While Plaintiff was physically able to return to his work duties, Dr. Fleck did not release Plaintiff to return to work as a dentist because she detected that Plaintiff had a central nervous system disorder, including cognitive problems and apraxia. These disorders result in difficulty getting neurologic impulses from the brain to the arms and legs. Plaintiff was also complaining of lightheadedness and cognitive problems. Dr. Fleck's opinion that the apraxia and central nervous deficiency are not related to Plaintiff's injury by accident is compelling and Dr. Fleck's *Page 7 
opinion is accepted as fact.
14. After April 2004, Dr. Fleck continued to treat Plaintiff for his unrelated central nervous system disorder and some subsequent low back injuries with leg pain. In July 2004, Plaintiff presented with left sided low back and leg complaints related to an incident where Plaintiff jumped out of bed. Plaintiff was diagnosed with an SI joint problem. Dr. Fleck's testimony establishes that these symptoms were not related to the January 2004 injury at work.
12. On July 1, 2004, Dr. Fleck reiterated to Plaintiff that he could not return to dentistry because of his central nervous system disorders and that these problems were not work-related.
13. On July 5, 2004, Plaintiff saw Dr. Iosso with Spartanburg Neurological Services. On July 19, 2004, Dr. Iosso performed nerve conduction studies which were normal, with no evidence of nerve root, or plexus lesion. Subsequent medical records from Spartanburg Neurological Services note a diagnosis of atypical Parkinson disease. A chart note for May 17, 2005, reports that Plaintiff was placed on Neurontin by Dr. Fleck and that this medication was continued by Dr. J. Christopher Caston.
14. Dr. Caston is a Board Certified Psychiatrist who has treated Plaintiff since 1987 for Plaintiff's mental disorders. Plaintiff has a history of cyclothymia, characterized by very outgoing, successful periods where Plaintiff would perform multiple tasks requiring little or no sleep. Periods of intensive activity and productivity would be followed by later periods of Plaintiff suffering severe depression.
15. Provigil, a new medicine for depression, provided Plaintiff with positive relief for his depression. This new drug allowed Plaintiff to accept the less complicated dental work available with the Department of Correction. Dr. Caston, however, did not know how long Plaintiff would be able to keep his job with the Department of Correction or how long Plaintiff would be able to keep the pace required for that job because Plaintiff had this underlying past history of periods of high functionality *Page 8 
and then periods of no functionality.
16. Dr. Caston opines that after his January 2004 injury, Plaintiff was crushed by the fact that he was not as functional as he was and he wanted to go back to work. Dr. Caston prescribed additional antidepressant medications after Plaintiff's January 2004 accident.
17. Luther A. Diehl. Ph.D., is a Clinical Psychologist, examined Plaintiff at the request of Dr. Caston. In May 2004, Dr. Diehl performed a clinical assessment of Plaintiffs functional levels. Dr. Diehl found that Plaintiff had (a) a major depressive disorder; (b) a cognitive disorder with processing and perceptual motor deficits; and (c) a personality disorder with significant characteristics of avoidance, dependence and schizotypal features. Plaintiff demonstrated elevation in somatisizing scales, suggesting a tendency to focus on psychological concerns and to over-report them.
18. In evaluating Plaintiff, Dr. Diehl received his information from Plaintiff. Dr. Diehl had not received any of the medical records for the treatment for Plaintiff's physical injuries from the January 26, 2004 accident. Dr. Diehl believes that Plaintiff's loss of self-esteem relating to his inability to return to work as a dentist has a substantial bearing on both his depression and cognitive function.
19. Dr. Diehl opined that pain could aggravate Plaintiff's pre-existing depressive condition and deferred the issues of causation to Dr. Fleck, the physician who treated Plaintiff for his back injury.
20. Terence E. Fitzgerald, Ph.D., a Psychologist, performed a forensic evaluation of Plaintiff. After a review of Plaintiff's medical records, a clinical interview with Plaintiff, as well as extensive psychological testing, Dr. Fitzgerald was not able to establish a relationship between Plaintiff's January 2004 injury as his psychological condition existed since the mid 1990s. Therefore, Plaintiff was disabled as a consequence of his psychiatric condition before he went to work for Defendants in 2003. Dr. Fitzgerald agrees that the inability to return to work as a dentist has worsened Plaintiff's anxiety and depression symptoms. *Page 9 
21. The stipulation of the parties establishes that Plaintiff sustained a low back injury on January 26, 2004 when he fell at work, which includes an annular tear at L5-Sl. The greater weight of the competent evidence fails to establish that Plaintiff sustained an injury to his head on January 26, 2006.
22. On April 8, 2004, following his successful completion of the functional restorative program at Spine Carolina, Plaintiff reached maximum medical improvement as to his low back injury with a two percent impairment rating to his back and could have physically returned to work as a dentist at a physical exertion level consistent with his employment by Defendant-Employer.
23. Dr. Fleck does not attribute any of Plaintiff's incapacity to return to work to the latter's depression. Dr. Fleck specifically testified that she initially suspected that Plaintiff was depressed for a period of time from the injury, but later he suspected Plaintiff was impaired beyond the scope of mere depression and may be suffering form an organic problem which turned out to be Parkinson's disease. Instead, Dr. Fleck did not release Plaintiff to return to work as a dentist because Plaintiff had a central nervous system problem, including cognitive problems and apraxia, which were not, in his opinion, related to the January 2004 accident.
19. The greater weight of the medical evidence establishes that Plaintiff's January 26, 2004 injury by accident exacerbated Plaintiff's preexisting psychological disorders. Dr. Caston, who has the longest treatment experience with Plaintiff, both pre and post work related injury, establishes that as a result of Plaintiff's preexisting mental conditions, Plaintiff experiences pain in greater degrees than persons without those conditions. In his opinion, which is accepted, the magnification of pain symptoms has a biological basis common to individuals who have the same mental disorders. Given Plaintiff's mental conditions, Plaintiff's pain, superimposed on his the residual physical symptoms form his work related injury and extensive preexisting mental disorders, prevents plaintiff from returning to employment. *Page 10 
20. Plaintiff has established his inability to earn wages from his January 26, 2004 injury by accident from April 8, 2004 and continuing.
 ***********
Based on the foregoing Stipulations and the Findings of Facts, the Undersigned makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an admittedly compensable injury by accident to his back on January 26, 2004, when he fell in the course of his employment and sustained an annular tear at L5-S1. N.C. Gen. Stat. § 97-2(6).
2. The greater weight of the evidence compels the conclusion that Plaintiff's injury by accident exacerbated his preexisting mental disorders. Workers are entitled to disability compensation for pre-existing non-disabling psychiatric conditions which are exacerbated by an accident at work. As compensation is available for physical injuries caused by an accident, physical injuries exacerbated by an accident, and psychiatric problems caused by an accident, there is no compelling reason for the Industrial Commission not to award compensation for psychiatric problems exacerbated by an accident.Morrison v. Burlington Industries, 304 N.C. 1, 282 S.E.2d 458
(1981)("When a pre-existing, non-disabling, non-job-related condition is aggravated or accelerated by an accidental injury arising out of and in the course of employment . . . so that disability results, then the employer must compensate the employee for the entire resulting disability even though it would not have disabled a normal person to that extent."); Toler v. Black Decker, 134 N.C. App. 695,518 S.E.2d 547 (1999).
3. The burden is on the employee to show that he is unable to earn the same wages he had earned before the injury, either in the same employment or in other employment. *Page 11 Hilliard v. Apex Cabinet Co., 305 N.C. 593, 595, 290 S.E.2d 682, 684
(1982); Coppley v. PPG Industries, 133 N.C. App. 631, 516 S.E.2d 184
(1999). The employee may meet this burden in one of four ways: (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury. Russell v. Lowes Product Distribution,108 N.C. App. 762, 425 S.E.2d 454 (1993); Tyndall v. Walter Kidde Co.,102 N.C. App. 726, 403 S.E.2d 548, disc. rev. denied, 329 N.C. 505,407 S.E.2d 553 (1991). All of the medical evidence by its greater weight establishes that Plaintiff remains temporarily totally disabled from April 8, 2006, the date Plaintiff reached maximum medical improvement for his physical impairments, because of the ongoing effects of his depression in concert with his other mental conditions and lingering physical systems related to his work related accident. N.C. Gen. Stat. § 97-29.
4. Defendants' reliance on Freeman v. Rothrock, ___ N.C. App. ___,657 S.E.2d 389 (2008) is misplaced. Defendants bear the burden of proof by the greater weight of the evidence that:
 a. The employee must have knowingly and willfully made a false representation as to his or her physical condition.
 b. The employer must have relied upon the false representation and this reliance must have been a substantial factor in the hiring. *Page 12 
 c. There must have been a causal connection between the false representation and the injury.
Defendants have proven the first element of the Rothrock test. Defendants failed present evidence of record proving the secondRothrock test. Assuming arguendo that Defendants had proven both the first and second prongs, Defendants' contention that there is a causal connection between the false representation and the injury is based upon Plaintiff's preexisting and undisclosed mental disorders and his status as receiving Social Security Disability benefits. The "injury" in the present case was related to a slip and fall due to ice and snow and bore no relation to Plaintiff's mental disorders.
3. Plaintiff has established that he requires additional medical care for the depression that was exacerbated by the injury of January 26, 2004. N.C. Gen. Stat. §§ 97-2(19) 97-25.
 ***********
Based on the foregoing Stipulations, Findings of Fact and Conclusions of Law, the Undersigned enters the following:
 AWARD
1. Defendants shall pay Plaintiff, subject to the attorney fee provided for hereinafter, temporary total disability benefits from April 8, 2006 and continuing further order of the Industrial Commission. Defendants are entitled to a credit for any sums paid by week during this period. The amount accrued to the date of this Order shall be paid in one lump sum. Prospective benefits shall be paid weekly.
2. Plaintiff shall pay an attorney fee of twenty-five percent of the disability benefits payable under the terms of this Award. For all disability benefits accrued to the date of this Award and not subject to Defendants' credit, Defendants will deduct the fee approved from sums due the Plaintiff and pay the *Page 13 
same directly to Plaintiff's counsel. For all future benefits, Defendants shall deduct every fourth disability payment to Plaintiff and pay the same directly to Plaintiff's counsel.
3. Defendants shall pay for medical treatment associated with Plaintiff's depressive state so long as such treatment provides a cure, lessens the period of disability, or provides relief from the symptoms. Dr. J. Christopher Caston is authorized to provide care for Plaintiff's depression.
4. Defendants shall bear the costs.
5. This the 11th day of March 2009.
S/___________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/___________________ LAURA K. MAVRETIC COMMISSIONER