***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence, affirms the Opinion and Award of the Deputy Commissioner with modifications and enters the following Opinion and Award.
 *********** RULINGS ON MOTIONS *Page 2 
At the hearing before the Deputy Commissioner, Defendant moved to set aside a previously entered stipulation regarding the presence of an employment relationship. The Full Commission adopts the ruling of the Deputy Commissioner and affirms the Deputy Commissioner's denial of Defendant's motion.
At the hearing before the Deputy Commissioner Defendant also moved to admit evidence on the ground that Plaintiff made a false representation on his employment application by not revealing his criminal convictions. In its motion Defendant relied on the holding of the Court of Appeals inFreeman v. Rothrock, 189 N.C. App. 31, 657 S.E.2d 389 (2008), applying the Larson Test. The Deputy Commissioner correctly held that there was no causal connection between the alleged false representations made by Plaintiff and Plaintiff's back injury; therefore, Defendant did not meet their burden of proof under the Larson Test. Subsequent to the decision of the Deputy Commissioner the Supreme Court of North Carolina on May 1, 2009 reversed the decision of the Court of Appeals in Freeman v.Rothrock for the reasons stated in the dissenting opinion. In adopting the dissenting opinion, the Supreme Court, in effect, held that creating a misrepresentation defense in a workers' compensation case would constitute judicial legislation, which neither the Industrial Commission nor the appellate courts has the authority to do. The Supreme held that adoption of the Larson Test is impermissible judicial legislation.Freeman v. Rothrock, 363 N.C. 249; 676 S.E.2d 46 (2009). Upon appeal to the Full Commission, Defendant moved, pursuant to Rule 701(6) of the Workers' Compensation Rules of the North Carolina Industrial Commission, for an Order allowing the inclusion of additional evidence in the form of an Affidavit from Thomas F. Wright, attached as an exhibit to Defendant's motion, on the grounds that such evidence is necessary to support Defendant's contention that Defendant's employment contract with Plaintiff was void from its inception due to fraud in the inducement of *Page 3 
the contract as a result of Plaintiff's alleged failure to divulge his criminal convictions. Defendant alleges that no employee-employer relationship ever existed because Plaintiff would not have been hired if he had divulged his criminal record. Defendant's defense, although based arguably on a different theory, still appears to be a misrepresentation defense, which Freeman v. Rothrock, has clearly rejected. Id. In response to Defendant's motions, Plaintiff argued that the proper manner for addressing the issues raised by Defendant is through the filing of a new Form 33 request for hearing, so as not to deny Plaintiff his right to fully contest the factual and legal bases for Defendant's motions. After consideration of the written and oral arguments of the parties, Defendant's motions are hereby DENIED. However, Defendant may file a new Form 33 in order to litigate any issues Defendant deems valid under existing law and over which the Industrial Commission has jurisdiction.
Defendant's motion filed May 29, 2009 to stay the decision of the Deputy Commissioner is DENIED. It was filed long after the time for compliance would have been due.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into in their Pre-trial Agreement and at the hearing as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act, and the North Carolina Industrial Commission has jurisdiction of the parties and of the subject matter of these proceedings.
2. The parties are correctly designated, and there is no question as to misjoinder or the nonjoinder of any party. *Page 4 
3. An employment relationship existed between the parties at the time of Plaintiff's injury.
4. Defendant was self-insured at the time of Plaintiff's injury.
5. The parties were subject to the North Carolina Workers' Compensation Act at the time of Plaintiff's injury, with Defendant employing the requisite number of employees to be bound by the provisions of the Act.
6. Defendant accepted Plaintiff's claim as compensable, with a date of injury of October 28, 2004. On that date, Plaintiff suffered injuries to his lower back at the L3-L4 and L5-S1 levels of the spine.
7. The parties stipulated to the following documents being admitted into evidence as stipulated exhibits:
 a. Stipulated Exhibit One (1) — Portions of Plaintiff's medical records marked as pages one (1) through 356;
 b. Stipulated Exhibit Two (2) — Additional portions of Plaintiff's medical records marked as pages one (1) through 10;
 c. Stipulated Exhibit Three (3) — Additional portions of Plaintiff's medical records marked as pages one (1) through 37.
8. The Deputy Commissioner admitted the following documents into evidence:
 a. Plaintiff's Exhibit one (1) — Information regarding Hoveround motorized wheelchairs;
 b. Defendant's Exhibit one (1) — Discovery responses;
 c. Defendant's Exhibit Two (2) — Plaintiff's employment application with Defendant-Employer; *Page 5 
 d. Defendant's Exhibit A — Plaintiff's March 3, 1997 plea of guilty from the State of Michigan;
 e. Defendant's Exhibit B — Plaintiff's April 24, 2000 Judgment of Sentence from the State of Michigan.
 *********** ISSUES
The issue to be determined is to what benefits is Plaintiff entitled?
 ***********
Based upon the competent and credible evidence of record, as well as any reasonable inferences that may be drawn therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 46 years old, with a date of birth of June 9, 1963. Plaintiff's employment history includes work handling logs in a sawmill and as a guardrail installer. In August 2003, Plaintiff began working for Defendant as a housekeeper, a job that involved cleaning dorm rooms and moving furniture. After a few months, Defendant transferred Plaintiff to a heavy labor job in the facilities department that involved the pick-up and delivery of supplies, moving furniture, and repairing furniture. Prior to October 28, 2004, Plaintiff was physically capable of performing the requirements of his previous employment and both of these positions with Defendant without any restrictions.
2. On October 28, 2004, Plaintiff experienced the onset of severe back and leg pain when he felt a pop in his lower back while lifting a large bale of rags into the back of a pick-up truck. Plaintiff reported this incident to Defendant. The following day, Plaintiff received treatment at Defendant's infirmary, where he received a diagnosis of lower back strain or *Page 6 
herniated nucleus pulposis. Defendant accepted the compensability of Plaintiff's October 28, 2004 work injury via a Form 60 dated November 11, 2004, and began paying $230.14 per week in temporary total disability compensation.
3. On November 5, 2004, Plaintiff presented to Dr. Stephen Alexander Purvis, an orthopaedist, who diagnosed him with lumbo-sacral strain-sprain syndrome with possible radiculopathy of the left leg. When Plaintiff's condition did not improve, Dr. Purvis ordered magnetic resonance imaging (MRI). On December 10, 2004, Plaintiff underwent a lumbar MRI, which revealed a central posterior disc herniation at the L3-L4 level of the spine. Based upon these findings, Dr. Purvis referred Plaintiff to Dr. Jon Michael Silver, a neurosurgeon.
4. On December 22, 2004, Dr. Silver saw Plaintiff, and diagnosed him with a prominent central and right-sided disc herniation at the L3-L4 level of the spine and a far left disc herniation with osteophyte at the L5-S1 level of the spine. Dr. Silver and Plaintiff agreed that surgical intervention would be the best course of treatment. Dr. Silver wrote Plaintiff out of work, and on January 13, 2005, Plaintiff underwent a right discectomy at the L3-L4 and L5-S1 levels of the spine and a foraminotomy at the L5-S1 level. Following Plaintiff's surgery, his lower back condition initially showed improvement. As of February 21, 2005, Dr. Silver released Plaintiff to return to work with restrictions including no lifting greater than 15 pounds, and no twisting or bending.
5. On February 23, 2005, Plaintiff began to experience significant lower back pain again following an incident when he walked up a hill while working for Defendant. Plaintiff returned to Dr. Silver, who ordered another lumbar MRI. On February 28, 2005, Plaintiff underwent a second lumbar MRI, which revealed, among other things, right para-central disc protrusion at the L3-L4 level of the spine, left para-central disc protrusion at the L5-S1 level of *Page 7 
the spine, and a "far right posterior disc bulge abutting against without definitely impinging the exiting right L5 nerve root." As a result, Dr. Silver wrote Plaintiff out of work.
6. Plaintiff's lower back pain continued to worsen, and so Dr. Silver ordered a third lumbar MRI, which Plaintiff underwent on April 4, 2005, and revealed "a small right paracentral disc herniation consistent with a reherniation" at the L3-L4 level of the spine. On June 1, 2005, Plaintiff underwent spinal computed tomography (CT) scanning, which revealed "post operative changes" at the L3-L4 level of the spine. Plaintiff also underwent a lumbar myleogram on June 1, 2005, which revealed a "cut off of the exiting right L4 nerve root with ventral defect on the thecal sac at this level." Dr. Silver prescribed an elevated toilet chair as well as heavy-duty lift chair for plaintiff.
7. On August 2, 2005, Dr. Margaret Ober Burke, a pain management specialist, assumed primary responsibility for Plaintiff's medical care with respect to his lower back complaints. Dr. Burke diagnosed Plaintiff with intractable lower back and leg pain following disc herniations at the L3-L4 and L5-S1 levels of the spine. Dr. Burke prescribed medications to address Plaintiff's complaints of severe pain, and the depression and anxiety that he developed following his October 28, 2004 work injury. On August 23, 2005, Dr. Burke noted that Plaintiff "continues to have severe difficulty with even the simplest tasks," and that he "remains medically unable to work."
8. On February 28, 2006, Plaintiff presented to Dr. Otis Delano Curling, Jr., a neurosurgeon, for an independent medical examination. Dr. Curling noted that Plaintiff's "postoperative studies demonstrate persistence of the disc defect at L3/4, with only partial enhancement, suggesting persistence and/or recurrence of the disc herniation." Dr. Curling also diagnosed Plaintiff with depression. On October 11, 2006, Dr. Curling noted that: *Page 8 
 [Plaintiff] has also requested that I review some literature regarding a motorized wheelchair. I have indicated to him that I consider this to be reasonable option to help facilitate improved mobility and function, though would discourage him from using such a device on a regular basis, feeling that he does need to continue with some exercise and conditioning activities.
9. In June 2006, Defendant designated Dr. Celeste Vangreuninge Peterson, a family medicine physician, as Plaintiff's authorized treating physician. Since that time, Dr. Peterson has been prescribing Plaintiff's medications related to his October 28, 2004 work injury, including several narcotic pain medications. Plaintiff continues to see Dr. Peterson on a regular basis.
10. Dr. Peterson opined and the Full Commission finds as fact that Plaintiff suffers from chronic pain and that Plaintiff's chronic lower back and leg pain as well as his depression are related to his October 28, 2004 work injury and that in addition to the other medications that he currently takes in connection with his work injury, he also requires sleep medication, Flowmax.
11. Dr Peterson further opined that Plaintiff needs a motorized scooter/wheelchair due to his difficulty with independently ambulating. Dr. Peterson felt that Plaintiff's use of a motorized scooter/wheelchair would help to alleviate his depression by allowing him to be less confined to his home. In addition, Dr. Peterson was of the opinion that it would be appropriate for Plaintiff to receive attendant home health care from his wife for four (4) hours per day. In forming this opinion, Dr. Peterson cited Plaintiff's inability "to even get up and get himself a meal, or a drink of water."
12. After Plaintiff filed his Form 33, Defendant scheduled independent medical examinations with Dr. Thomas Scott Ellison, an orthopaedist; Dr. Terence Edward Fitzgerald, a psychologist; and Dr. Richard Smothers Broadhurst, an occupational and environmental medicine *Page 9 
specialist. Additionally, Defendant sought a medical record review from Dr. Robert F. Sexton, Jr., a neurosurgeon from Kentucky. Dr. Sexton did not examine Plaintiff.
13. On January 28, 2008, Plaintiff presented to Dr. Ellison for an independent medical examination. Based upon Dr. Ellison's physical examination of Plaintiff, he questioned how Plaintiff could have the discomfort or limitation of ability for which he complained in light of his mechanism of injury, and opined that Plaintiff's current symptoms were not attributable to the pre-operative and post-operative radiological findings at the right L3-L4 level of the spine. Dr. Ellison was also of the opinion that Plaintiff's medications for chronic obstructive pulmonary disease, diabetes, and neurogenic bladder are not related to his October 28, 2004 work injury, that Plaintiff's pain medications should be reduced, and that eventually, he should be weaned off of them. In addition, Dr. Ellison recommended that Plaintiff see a pain management specialist. Finally, Dr. Ellison opined that Plaintiff did not need a motorized scooter/wheelchair or attendant care as a result of his October 28, 2004 work injury.
14. On April 17, 2008, Plaintiff presented to Dr. Fitzgerald for an independent psychological evaluation. Dr. Fitzgerald opined that Plaintiff has a somatoform pain disorder, which means that he converts his psycho-social distress and his medical distress into physical complaints. Dr. Fitzgerald also opined that although Plaintiff does have some pre-existing and likely chronic patterns of major depression due to major traumas that he suffered in the past, such as a closed-head injury as a child, a major automobile accident as a result of driving while impaired, and incarceration for driving while impaired, he is not currently clinically depressed. Dr. Fitzgerald was also of the opinion that Plaintiff should not have a motorized scooter/wheelchair, and that Plaintiff did not need attendant care. *Page 10 
15. Dr. Broadhurst examined Plaintiff on April 17, 2008, and noted that Plaintiff's pain complaints were not consistent with what he typically sees in patients with injury and resulting surgery to the L3-L4 and L5-S1 levels of the spine. Dr. Broadhurst opined that Plaintiff's bowel and bladder incontinence are not related to his October 28, 2004 work injury, since there is no nerve damage at the level that he would expect to see for those types of problems. Dr. Broadhurst also opined that Plaintiff was capable of sedentary work, and that the only drug he needed as a result of his October 28, 2004 work injury was methocarbimol. Dr. Broadhurst further opined that a motorized scooter/wheelchair would be a bad idea for Plaintiff, and that Plaintiff did not require attendant care.
16. Dr. Sexton opined that Plaintiff's hypertension, diabetes, liver dysfunction, chronic obstructive pulmonary disease, gastro-esophageal reflux disease, obstructive sleep apnea, urinary retention, high cholesterol, and irritable bowel syndrome are all unrelated to his October 28, 2004 work injury. Dr. Sexton further opined that additional treatment for Plaintiff's lower back condition is not reasonable, medically necessary, or related to the October 28, 2004 work injury, and that Plaintiff's current pain management is counterproductive, since he is currently being over-medicated with narcotics, which can actually cause Plaintiff to perceive that he is in more pain than he actually is. Dr. Sexton was also of the opinion that Plaintiff's psychological problems are not related to his October 28, 2004 work injury.
17. At the hearing before the Deputy Commissioner, Plaintiff testified that on several occasions, he rented a motorized scooter and found it beneficial in enabling him to go places and participate in activities outside of the home that he could not attend without this assistance. Plaintiff also testified that with respect to attendant care, he needed assistance on a daily basis with bathing his lower extremities, getting in and out of the bathtub, as well as assistance with *Page 11 
dressing, getting in and out of chairs, cooking, and other activities of daily living. Plaintiff's wife corroborated Plaintiff's testimony regarding his need for attendant care, and further testified that that she had to stop working outside the home in order to provide the assistance that her husband needed with his activities of daily living.
18. The Full Commission finds based upon the greater weight of the evidence that the circumstances of Plaintiff's October 28, 2004 work injury constituted a specific traumatic incident of the work assigned that arose out of and in the course of his employment with Defendant during a judicially cognizable time period.
19. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff's October 28, 2004 work injury caused, aggravated, or accelerated his current lower back condition. The Full Commission further finds as fact that Plaintiff's October 28, 2004 work injury and chronic lower back pain exacerbated his psychological problems.
20. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff would benefit from a referral to a pain management specialist for the purpose of evaluating his current medication needs and his psychological condition related to his chronic pain, and to evaluate Plaintiff's need for a motorized scooter/wheelchair. Once the parties agree upon a pain management specialist or a referral is made by the North Carolina Industrial Commission Nurse's Section, the pain management specialist will then become Plaintiff's authorized treating physician. In the interim, the Full Commission further finds that Plaintiff would benefit from having Defendant make available a manual wheelchair for purposes of assisting him with ambulation. 21. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff's current lower back and chronic pain conditions necessitate attendant care for four (4) *Page 12 
hours per day. However, the Full Commission further finds that such attendant care should be provided by an outside caregiver other than Plaintiff's wife who is employed or affiliated with a health care agency skilled in providing such services.
22. On February 28, 2005, Dr. Silver wrote Plaintiff out of work. Plaintiff did not return to any employment after that date, and none of his treating physicians released him back to work after that date. Thus, Plaintiff remains medically disabled and unable to earn wages from any employment as a result of his October 28, 2004 work injury from February 28, 2005 to the present and continuing.
23. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff's average weekly wage at all times relevant to these proceedings was $345.20, yielding a compensation rate of $230.14.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable specific traumatic incident of the work assigned that arose out of and in the course of his employment with Defendant on October 28, 2004 to his lower back during a judicially cognizable time period. N.C. Gen. Stat. § 97-2(6) (2008); Fish v.Steelcase, Inc., 116 N.C. App. 703, 707, 449 S.E.2d 233, 237 (1994),cert. denied, 339 N.C. 737, 454 S.E.2d 650 (1995); Bradley v. E.B.Sportswear, Inc., 77 N.C. App. 450, 335 S.E.2d 52 (1985).
2. Plaintiff's October 28, 2004 work injury either caused his current lower back condition or materially accelerated or aggravated a pre-existing, non-disabling back condition. *Page 13 
N.C. Gen. Stat. § 97-2(6) (2008); Brown v. Family Dollar DistributionCenter, 129 N.C. App. 361, 499 S.E.2d 197 (1998).
3. Plaintiff's October 28, 2004 work injury and chronic lower back pain exacerbated his psychological problems. Workman v. RutherfordElectric Membership Corp., 170 N.C. App. 481 (2005); Toler v. Black andDecker, 134 N.C. App. 695, 518 S.E.2d 547 (1999).
4. On February 28, 2005, Dr. Jon Michael Silver wrote Plaintiff out of work. Plaintiff did not return to any employment after that date, and none of his treating physicians released him back to work after that date. Thus, Plaintiff remains medically disabled and unable to earn wages from any employment as a result of his October 28, 2004 work injury from February 28, 2005 to the present and continuing, thereby satisfying prong two (2) of Russell v. Lowes Product Distribution. Russell v. Lowe'sProduct Distribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993). Plaintiff remains temporarily and totally disabled from employment. N.C. Gen. Stat. § 97-29 (2008).
5. Plaintiff would benefit from a referral to a pain management specialist for the purpose of evaluating his current medication needs and his psychological condition related to his chronic pain, and to evaluate Plaintiff's need for a motorized scooter/wheelchair. Once either the parties agree upon a pain management specialist or a referral is made by the North Carolina Industrial Commission Nurse's Section, the pain management specialist will then become Plaintiff's authorized treating physician. In the interim, Defendant should provide Plaintiff a manual wheelchair to assist him with ambulation.
6. Plaintiff's current lower back and chronic pain conditions necessitate attendant care for four (4) hours per day. Such attendant care shall be provided by an outside caregiver *Page 14 
other than Plaintiff's wife who is employed or affiliated with a health care agency skilled in providing such services.
7. Plaintiff is not at maximum medical improvement with respect to his October 28, 2004 work injury, and he requires further medical and psychological evaluations, testing, and treatment in order to effect a cure, to give relief, and/or to lessen his period of disability. N.C. Gen. Stat. §§ 97-25; 97-25.1 (2008).
8. Plaintiff's average weekly wage at all times relevant to these proceedings was $345.20, yielding a compensation rate of $230.14.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, Defendant shall continue to pay temporary total disability compensation to Plaintiff at the rate of $230.14 per week until further Order of the North Carolina Industrial Commission.
2. Defendant shall pay all medical and psychological expenses incurred or to be incurred as a result of Plaintiff's October 28, 2004 work injury, for so long as such evaluations, examinations, and treatments may reasonably be required to effect a cure, to give relief, and/or to lessen her period of disability, in accordance with the provisions of the North Carolina Workers' Compensation Act. Such medical expenses shall include a referral to a pain management specialist for the purpose of evaluating his current medication needs and his psychological condition related to his chronic pain, and to evaluate Plaintiff's need for a motorized scooter/wheelchair. Once the parties agree upon a pain management specialist or a referral is *Page 15 
made by the North Carolina Industrial Commission Nurse's Section, the pain management specialist will then become Plaintiff's authorized treating physician. In the interim, Defendant shall provide a manual wheelchair to assist Plaintiff with ambulation. Defendant shall also provide to Plaintiff attendant care for four (4) hours per day. Such attendant care shall be provided by an outside caregiver other than Plaintiff's wife who is employed or affiliated with a health care agency skilled in providing such services.
3. A reasonable attorney's fee of 25 percent is hereby approved for Plaintiff's counsel from the sums due Plaintiff under paragraph one (1), above. Defendant shall deduct and pay directly to Plaintiff's counsel 25 percent of any accrued compensation owed to Plaintiff and thereafter, every fourth (4th) check from future compensation due Plaintiff.
4. Defendant shall pay the costs of these proceedings.
This the ___ day of June 2009.
 S/___________________
 BERNADINE S. BALLANCE
 COMMISSIONER
CONCURRING:
 S/___________________ STACI T. MEYER COMMISSIONER
 S/___________________ DIANNE C. SELLERS COMMISSIONER *Page 1